# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155

| | |
|---|---|
| Appellate Court Caption | LANDMARK AMERICAN INSURANCE COMPANY, Plaintiff-Appellee, v. NIP GROUP, INC., and LAWRENCE BRODSKY, Defendants-Appellants. |
| District & No. | First District, First Division<br>Docket Nos. 1-10-1155, 1-10-1158 cons. |
| Rule 23 Order filed | April 25, 2011 |
| Modified Rule 23 Order filed | September 19, 2011 |
| Rehearing denied | September 20, 2011 |
| Rule 23 Order withdrawn | October 19, 2011 |
| Opinion filed | December 5, 2011 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action seeking a declaratory judgment that plaintiff had no obligation to defend or indemnify defendant insured in an underlying class action alleging that it sent unsolicited advertisements by facsimile, the entry of summary judgment for plaintiff was reversed on the ground that Illinois laws recognized at least the potential for coverage, defendants' *forum non conveniens* motion was properly denied and, under the *Peppers* doctrine, the trial court improperly refused to stay or dismiss the count alleging no coverage based on dishonest, fraudulent, criminal or intentional acts, and further, defendants' petition for rehearing, which argued that summary judgment was reversed on grounds that were never raised by any party, that coverage was created by an exclusion in the policy, and that Illinois law and the allegations in the underlying suit were misapprehended, was denied.

Decision Under Review

Appeal from the Circuit Court of Cook County, No. 09-CH-11005; the Hon. William O. Maki, Judge, presiding.

Judgment

Petition for rehearing denied.

Counsel on Appeal

Neal Gerber & Eisenberg, LLP, of Chicago (Samuel S. Cohen and John J. Sharkey, of counsel), for appellant NIP Group, Inc.

Anderson & Wanca, of Rolling Meadows (Brian J. Wanca and David M. Oppenheim, of counsel), for appellant Lawrence Brodsky.

Tressler LLP, of Chicago (Shaun McParland Baldwin, Thomas K. Hanekamp, and Kathy Karaboyas Malamis, of counsel), for appellee.

Panel

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendants, NIP Group, Inc. (NIP), and Lawrence Brodsky, have each appealed

-2-

following an order entering summary judgment in favor of plaintiff, Landmark American Insurance Company (Landmark), in this action for declaratory judgment. Landmark's suit sought a declaration that it had no obligation to defend or indemnify NIP in an underlying class action lawsuit filed by Mr. Brodsky to recover for NIP's alleged practice of sending unsolicited advertisements via facsimile.

¶ 2 In his appeal (No. 1-10-1155), Mr. Brodsky asserts that the circuit court improperly applied Illinois rather than New Jersey law in its analysis, and that summary judgment in favor of Landmark was in any case improper under the law of either state. In its appeal (No. 1-10-1158), NIP also challenges the entry of summary judgment in favor of Landmark, but additionally asserts that the circuit court erred in denying its motions: (1) to dismiss for *forum non conveniens*; (2) to dismiss or stay the declaratory judgment action as being premature; and (3) requesting discovery for purposes of responding to Landmark's motion for summary judgment. These two appeals have now been consolidated, and for the following reasons we affirm in part, reverse in part, and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4 This insurance coverage dispute arises out of a class action lawsuit Mr. Brodsky filed against NIP in the circuit court, styled "Lawrence S. Brodsky, Individually, and as the Representative of a Class of Similarly-Situated Persons v. NIP Group, Inc.," No. 08 CH 22051. In that suit, Mr. Brodsky generally alleged he was a Cook County resident and that NIP, a New Jersey insurance corporation with its principal place of business in New Jersey, had a practice of sending unsolicited fax advertisements for its insurance products and services. More specifically, Mr. Brodsky alleged NIP had sent him such advertisements on three separate occasions in 2008, and copies of those advertisements were attached to the complaint. Mr. Brodsky further asserted NIP had "faxed the same or similar advertisements to [himself] and more than 39 other recipients without first receiving the recipients' express permission or invitation."

¶ 5 The underlying complaint sought relief for Mr. Brodsky and the other proposed class members in three separate counts, pursuant to: (1) the federal Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227 (2006)); (2) the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2008)); and (3) a common law claim for conversion. NIP tendered the defense of Mr. Brodsky's suit to both its general liability insurer and Landmark, which had issued NIP a professional liability policy. While NIP's general liability insurer undertook the defense of Mr. Brodsky's suit under a reservation of rights, Landmark, an Oklahoma insurer with its principal place of business in Georgia, denied it had a defense or indemnity obligation and filed the instant declaratory judgment action against NIP. Mr. Brodsky was also named a defendant as a necessary party.

¶ 6 Attached to the complaint was a copy of the insurance policy Landmark issued to NIP. The policy provides NIP with "MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE" and contains the following relevant provisions:

"Part I. Insuring Agreement

A. Covered Services

[Landmark] will pay on behalf of the Insured, as shown in the Declarations, all sums that the Insured becomes legally obligated to pay as *Damages* and associated *Claim Expenses* arising out of a negligent act, error or omission, *Advertising Liability* or *Personal Injury*, even if the *Claim* asserted is groundless, false or fraudulent, in the rendering or failure to render professional services as described in the Declarations ***[.]

* * *

B. Defense and Settlement

[Landmark] will have the right and duty to defend any *Claim* against an Insured seeking *Damages* to which this policy applies, even if any of the allegations of the Claim are groundless, false or fraudulent. ***

* * *

Part II. Exclusions

This policy does not apply to any *Claim* or *Claim Expenses* based upon or arising out of:

* * *

L. False advertising or misrepresentation in advertising, but only regarding intentionally false, misleading, deceptive, fraudulent, or misrepresenting statements in advertising the insured's own product or service.

* * *

Part III. Definitions

A. *Advertising Liability* means injury arising out of one or more of the following offenses:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's organization, products or services;

2. Oral or written publication of material that violates a person's right of privacy;

3. Misappropriation of advertising ideas or style of doing business." (Emphasis in original.)

¶ 7    With respect to those "professional services" for which NIP was provided coverage, the "Covered Services" portion of the "Insuring Agreement" refers to the declaration page of the policy, which in turn refers to a "BUSINESS DESCRIPTION ENDORSEMENT." Included in that endorsement is a list of NIP's professional services, without further specific definition, which were covered by the policy. That list included NIP's role as an insurance wholesaler, insurance managing general agent, insurance general agent, insurance underwriting manager, insurance program administrator, insurance agent, insurance broker, surplus lines insurance broker, insurance consultant, insurance claims administrator, insurance appraiser, and insurance premium financier.

¶ 8    Landmark's eight-count complaint asserted a number of reasons why it had no responsibilities with respect to the Brodsky complaint. Count I asserted that because the

alleged sending of unsolicited fax advertisements did not constitute the "rendering or failure to render professional services" as described in the policy, there was no coverage for the Brodsky suit. The remaining counts raised various policy exclusions to insurance coverage, which among others included exclusions for damages caused by conversion, property damage, or intentional acts. Landmark also sought a declaration that its policy was excess to any of NIP's other insurance covering the Brodsky suit, and that it had no duty to indemnify NIP for certain specified damages.

¶ 9    Mr. Brodsky filed his answer, including affirmative defenses asserting that Landmark had waived or was estopped from raising any policy defenses due to its failure to defend NIP in the underlying suit. NIP, however, filed a motion to dismiss or stay Landmark's suit. NIP argued that, pursuant to *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187 (1976), the declaratory judgment action should be dismissed or stayed because resolution of this case would necessarily require the determination of factual matters at issue in the underlying litigation. Specifically, NIP asserted that any resolution of this action would improperly require a determination of whether NIP's alleged actions were intentional, amounted to conversion, or were part of an ongoing business relationship with the members of the class. NIP also asserted that any resolution of Landmark's indemnity obligation would be premature while the underlying litigation was still ongoing and no liability had yet been incurred.

¶ 10    The circuit court denied NIP's motion, and NIP subsequently filed its answer and affirmative defenses to Landmark's suit. Among those defenses were assertions that Landmark's failure to defend had resulted in any policy defenses being waived or barred by the doctrine of estoppel. NIP also contended that, because Landmark's policy specifically included coverage for "*Advertising Liability*," any argument that the Brodsky suit was not covered by the policy was against public policy and would improperly render that coverage illusory.

¶ 11    Just before NIP filed its answer and affirmative defenses, Landmark filed a motion for summary judgment. Landmark's motion relied solely on the allegations contained in count I of its complaint, *i.e.*, that the unambiguous language of its policy established that sending unsolicited fax advertisements was not a "professional service," and, therefore, there was no coverage for the Brodsky suit. NIP obtained an order from the circuit court staying further briefing on this motion and permitting NIP to file a motion to dismiss for *forum non conveniens*. The motion argued that this case should be dismissed in favor of proceeding in a more appropriate forum, New Jersey. After briefing and argument, NIP's *forum non conveniens* motion was denied. At the hearing on this motion, the circuit court also granted Landmark leave to file an amended motion for summary judgment, entered a briefing schedule for that motion, and specifically denied NIP's oral request to engage in discovery before responding to the amended motion for summary judgment.

¶ 12    In its amended motion for summary judgment, Landmark again relied solely on its bare assertion that sending unsolicited fax advertisements was not a "professional service" under its policy. Landmark contended that Illinois law applied to this case, and its position was supported by the Second District's decision in *Westport Insurance Corp. v. Jackson National Life Insurance Co.*, 387 Ill. App. 3d 408 (2008). In that case, the appellate court found that

an insurance agent's practice of sending unsolicited fax advertisements was not covered under a professional liability insurance policy because such actions did not amount to a "professional service." *Westport*, 387 Ill. App. 3d at 413-14.

¶ 13 NIP responded to Landmark's motion by asserting that New Jersey law applied, and under relevant New Jersey precedent the policy provided coverage to the Brodsky suit. NIP further asserted that even if Illinois law applied, summary judgment was inappropriate and the *Westport* decision was inapplicable as it involved different policy language and different underlying facts. Finally, NIP contended it should, at the very least, be entitled to discovery in support of its response to Landmark's motion. NIP argued that discovery was necessary and relevant to determine the nature of its professional services and the facts surrounding its affirmative defenses. These assertions were supported by three affidavits, one of which was filed pursuant to Illinois Supreme Court Rule 191(b) (eff. July 1, 2002). In his response, Mr. Brodsky also argued that New Jersey law applied and summary judgement was improper under either Illinois or New Jersey law.

¶ 14 In ruling upon Landmark's motion, the circuit court first noted that it was again denying NIP's request for additional discovery. The court reasoned, because its analysis of Landmark's duty to defend turned solely on a comparison of the allegations of the underlying complaint to the relevant provisions of the insurance policy, any such further discovery was unnecessary. The court then addressed the choice of law issue, finding that, because there was generally no relevant conflict between the law of Illinois and New Jersey law, it would apply the law of this forum. Following the holding in *Westport*–and noting that this specific question had not been addressed by the courts in New Jersey–the circuit court determined that the unambiguous language of the Landmark policy did not provide coverage for the allegations contained in the Brodsky complaint.

¶ 15                                    II. ANALYSIS

¶ 16 Mr. Brodsky and NIP filed separate appeals in this case, and those appeals have now been consolidated. Because they have each explicitly adopted the arguments contained in their separate briefs, however, we will refer to their assertions on appeal collectively. For the following reasons, we find that the circuit court: (1) properly denied the *forum non conveniens* motion; (2) improperly refused to stay a portion of this suit; and (3) improperly granted summary judgment in favor of Landmark. As a result of these findings, the issue of NIP's right to discovery in support of its response to Landmark's summary judgment motion is rendered moot.

¶ 17                        A. Choice of Law and Summary Judgment

¶ 18 We first address the circuit court's choice of law and summary judgment determinations, as the resolution of these issues will inform our discussion of the other matters raised on appeal.

¶ 19 Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits, viewed in the light most favorable to the nonmovant, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

735 ILCS 5/2-1005(c) (West 2008). "The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Our review of an order granting summary judgment is *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010).

¶ 20    In disputing Landmark's right to summary judgment under count I of its complaint, the parties have debated whether there is an outcome-determinative difference in how NIP's insurance policy would be interpreted under New Jersey law as opposed to the law of Illinois. While NIP and Mr. Brodsky assert that there are significant differences between the approaches taken by these two states in the interpretation of insurance policies, they ultimately contend that, under either approach, Landmark has a duty to defend NIP in the Brodsky litigation. Landmark asserts that there are no significant differences between the law of New Jersey and Illinois, a full choice of law analysis is therefore unnecessary, Illinois law should be applied here, and pursuant to the *Westport* decision it has no duty to defend NIP under Illinois law. The circuit court agreed with Landmark's position, and this decision is also reviewed *de novo*. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153-54 (2007).

¶ 21    In general, the forum court applies the choice of law rules of its own state to determine which state's law will apply. *Id*. at 155. In Illinois, "a choice-of-law analysis begins by isolating the issue and defining the conflict. A choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Id*. Thus, "[o]nly if the application of the law of one state will yield a different result from the application of the law of a second state is a choice-of-law analysis necessary. [Citations.] If the relevant laws of the two states yield essentially the same result regarding the issue in question, so that application of either law will produce the same result, there is no need to apply a choice-of-law analysis. [Citation.] In the absence of a conflict in the relevant laws of the two states, the law of the forum state applies." *Gleim v. Roberts*, 395 Ill. App. 3d 638, 641 (2009).

¶ 22    In many respects, courts in New Jersey and Illinois interpret insurance policies and determine an insurer's duties in a similar fashion. In both states the construction of an insurance contract is a question of law subject to *de novo* review. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006); *Homesite Insurance Co. v. Hindman*, 992 A.2d 804, 806 (N.J. Super. Ct. App. Div. 2010). An insurance policy generally will be interpreted to give effect to the intention of the parties, as that intention is expressed by the language of the policy when given its plain and ordinary meaning. *Valley Forge Insurance Co.*, 223 Ill. 2d at 362-63; *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010). However, any ambiguities in the language of an insurance policy will be interpreted in favor of the insured. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363; *Homesite Insurance Co.*, 992 A.2d at 806.

¶ 23    Similarly, in both states, an insurer's duty to defend its insured in any lawsuit is initially determined by comparing the allegations of the complaint against an insured with the language of the policy. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363; *Voorhees v. Preferred Mutual Insurance Co.*, 607 A.2d 1255, 1259 (N.J. 1992). An insurer has a duty to defend if even a single claim, liberally construed and without regard to the claim's actual merit,

potentially falls within the policy's coverage. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363; *Voorhees*, 607 A.2d at 1259-60.

¶ 24    Nevertheless, NIP and Mr. Brodsky assert that there remain at least two significant differences between the law of New Jersey and Illinois that are relevant to the resolution of this matter.

¶ 25    First, while both states will construe any ambiguities in an insurance policy against an insurer, New Jersey courts also interpret *unambiguous* policy language in favor of the insured. Specifically, New Jersey applies what is known as the "doctrine of reasonable expectations." *Zacarias v. Allstate Insurance Co.*, 775 A.2d 1262, 1265 (N.J. 2001). Under this doctrine, "if an insured's 'reasonable expectations' contravene the plain meaning of a policy, even its plain meaning can be overcome." *Voorhees*, 607 A.2d at 1260 (quoting *Werner Industries v. First State Insurance Co.*, 548 A.2d 188, 191 (N.J. 1988). Thus, "in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, [citation], cannot be understood without employing subtle or legalistic distinctions, [citation], is obscured by fine print, [citation], or requires strenuous study to comprehend, [citation]." *Zacarias*, 775 A.2d at 1268.

¶ 26    In contrast, the status of the reasonable-expectations doctrine in Illinois is, at best, unclear. Some cases have specifically rejected the notion that the reasonable-expectations doctrine applies in Illinois. See, *e.g.*, *El Rincon Supportive Services Organization, Inc. v. First Nonprofit Mutual Insurance Co.*, 346 Ill. App. 3d 96, 106 (2004); *Smagala v. Owen*, 307 Ill. App. 3d 213, 219 (1999); *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175, 192 (1986). Other cases appear to recognize the applicability of the doctrine. *Whitt v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 658, 662 (2000); *Crawford Laboratories, Inc. v. St. Paul Insurance Co. of Illinois*, 306 Ill. App. 3d 538, 544 (1999).

¶ 27    Second, Illinois and New Jersey have taken different approaches to interpreting the scope of coverage in professional liability policies such as the one at issue here. In Illinois, our supreme court has stated a "court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract," and has recognized that professional liability policies are a limited and specialized form of insurance. *Crum & Forster*, 156 Ill. 2d at 391. Therefore, such policies generally will be construed to provide coverage only for those risks that are "inherent" in the practice of the professional services of the insured, even where they explicitly provide coverage for risks merely "arising out of" those professional services. *Crum & Forster*, 156 Ill. 2d at 392-93.

¶ 28    New Jersey has taken a different view of this question. In *Princeton Insurance Co. v. Chunmuang*, 698 A.2d 9, 18 (N.J. 1997), the New Jersey Supreme Court considered the scope of coverage under a professional liability policy that provided coverage for risks "arising out of" a physician's professional services. After considering the narrow construction this language had been given in other states, the court ultimately concluded that such policy language "does not restrict the scope of coverage to injuries resulting only from

-8-

acts that can fairly be characterized as 'professional' in nature, *** the coverage encompasses injuries caused by *any* act or failure to act by the physician that occurs in the course of furnishing professional services." (Emphasis in original.) *Id*. The court thus adopted a "substantial nexus" approach, under which "the important question is simply whether a substantial nexus exists between the context in which the acts complained of occurred" and the professional services covered by the insurance policy. *Id*. This approach was recognized to be "significantly broader" than other, more restrictive approaches. *Id*. at 16.

¶ 29    Of course, the question here is not whether there are any differences between the law of New Jersey and Illinois, but whether any such differences would result in a different outcome. *Townsend*, 227 Ill. 2d at 155. The parties have vigorously disputed what, if any, significance the above differences in insurance policy construction might have on the outcome of this coverage dispute.

¶ 30    NIP and Mr. Brodsky contend that there is coverage under its policy for the Brodsky suit under New Jersey law, considering the reasonable-expectations doctrine and the broad "substantial nexus" approach New Jersey applies to determine the risks covered by professional liability policies. They also assert that coverage is available under Illinois law. NIP and Brodsky finally argue that, even assuming there is no coverage under Illinois law, the relevant choice of law principles demand the application of New Jersey law and a finding of coverage.

¶ 31    Landmark does not dispute the contention that, in the event of a conflict, this court would have to apply New Jersey law to this question. Instead, Landmark points to the fact that the two states share a number of general principles of insurance policy interpretation and asserts that there is effectively no difference between them. It then argues that no ambiguity exists in its policy language and, unconvincingly in light of the above discussion, that the courts of New Jersey only apply the reasonable-expectations doctrine when there is an ambiguity. Finally, Landmark asserts that, because no New Jersey court has addressed the exact question at issue here, Illinois law in general and the *Westport* decision in particular were correctly applied by the circuit court to find no possibility of coverage.

¶ 32    This argument ultimately proves superfluous, however, as the question of Landmark's entitlement to summary judgment pursuant to count I of its motion can be resolved by simply comparing the allegations of the underlying complaint with the plain and ordinary meaning of the language of NIP's policy.

¶ 33    In the underlying complaint, Mr. Brodsky alleged that NIP had a "practice of faxing unsolicited advertisements." Attached to the complaint were copies of three faxes–each describing various insurance products or services offered by NIP–which were allegedly sent by NIP to Mr. Brodsky and the other purported class members. Among other things, the complaint claimed damages because NIP's practice of sending such faxes "unlawfully interrupted [Mr. Brodsky's] and the other class members' privacy interests in being left alone."

¶ 34    Turning to the "MISCELLANEOUS PROFESSIONAL LIABILITY" insurance policy Landmark provided NIP, the relevant portions of the insuring agreement provide coverage

for claims "arising out of *** *Advertising Liability* *** in the rendering or failure to render professional services as described in the Declarations." The declaration page, in turn, refers to an endorsement which indicates that NIP's professional services include a host of insurance-related activities, including NIP's roles as an insurance wholesaler, managing general agent, general agent, underwriting manager, program administrator, agent, broker, surplus lines insurance broker, consultant, claims administrator, appraiser, and premium financier.

¶ 35    As defined in the policy, "*Advertising Liability*" includes "[o]ral or written publication of material that violates a person's right of privacy." We note that courts applying both Illinois and New Jersey law have found that allegedly unsolicited fax advertisements, which violate a claimant's right to privacy, fall within such a policy definition. *Valley Forge Insurance Co.*, 223 Ill. 2d at 368; *Terra Nova Insurance Co. v. Fray-Witzer*, 869 N.E.2d 565, 573-74 (Mass. 2007) (applying New Jersey law). The only specifically relevant limitation on this advertising liability coverage in the policy issued to NIP, other than the requirements contained in the insuring agreement itself, is contained in a provision excluding coverage for "[f]alse advertising or misrepresentation in advertising, but only regarding intentionally false, misleading, deceptive, fraudulent, or misrepresenting statements in advertising the insured's own product or service."

¶ 36    In short, we are confronted with a complaint that seeks to recover for NIP's alleged practice of sending unsolicited advertisements for its insurance services and products, advertisements which violated the privacy rights of Mr. Brodsky and the purported class members. NIP's policy, in turn, provides coverage for claims arising out of advertising which violate a person's right to privacy, where that advertising occurs in the rendering or failing to render any of the many insurance-related services included in the endorsement. The only further limitation on this coverage excludes only "intentionally false, misleading, deceptive, fraudulent, or misrepresenting statements" in NIP's advertising of its insurance services. As the faxes alleged in the Brodsky suit each advertise NIP's insurance-related activities, and as the Brodsky complaint in no way attempts to recover based upon a theory related to false advertising, the plain language of the policy issued to NIP indicates that coverage is potentially available for Brodsky's suit.

¶ 37    Nevertheless, Landmark asserts–and the trial court agreed–that NIP's practice of advertising its products and services could never be construed as a "professional service" triggering coverage under the policy because such advertising is not an activity inherent to its insurance-related businesses. This argument is supported by citation to the Second District's decision in *Westport*, in which the court considered a professional liability policy covering an insurance agent and which provided that the insurer agreed to pay for any loss:

   " 'sustained by the Insured by reason of liability imposed by law for damages caused by any *** invasion of privacy by the insured agent, arising out of the conduct of the business of the insured agent in rendering services for others as a licensed life, accident and health insurance agent, a licensed life, accident and health insurance general agent or a licensed life, accident and health insurance broker while there is in effect a contract between the Named Insured and the licensed insured agent.' " *Westport,* 387 Ill. App. 3d at 410.

-10-

¶ 38    The *Westport* court found that this policy language did not provide coverage for a class action suit brought against the insured for the transmission of allegedly unsolicited fax advertisements. *Id*. at 409. Relying in part on the narrow interpretation of professional liability policies espoused in *Crum & Forster* and described above, the court reasoned: "Insurance sales professionals use special knowledge and training about insurance products to help customers select products that are best suited to their particular needs. [The insured] merely sent out an advertisement describing general features of a plan or plans for 'Group Health Insurance With Affordable Premiums.' *** Thus, the advertisement was merely an overture to potential customers." *Id*. at 413-14. As such, the unsolicited fax advertisements at issue were held to be a "mere offer to perform a professional service [and] not a professional service in its own right." *Id*. at 414.

¶ 39    We certainly recognize that Illinois law views professional liability policies to be limited forms of insurance, which generally provide coverage only for those risks "inherent" in the insured's professional services. *Crum & Forster*, 156 Ill. 2d at 392-93. However, Landmark and the circuit court essentially read *Crum & Forster* and *Westport* to establish that sending unsolicited fax advertisements can *never* amount to the provision of professional services under a professional liability policy–despite any possible differences in the specific policy language at issue, the services provided by an insured, or the underlying facts. We believe this interpretation is much too broad. The *Crum & Forster* case was decided "[u]nder the policies at issue." *Id*. at 393. Similarly, the *Westport* decision notes "it is the actual language of a policy that ultimately controls the determination of what risks are covered." *Westport*, 387 Ill. App. 3d at 412. Furthermore, the *Westport* court's conclusion was based upon its determination of the professional services included "within the contemplation of the policy" at issue in that case. *Id.* at 414. Notably, the policy in *Westport* included significantly different language.

¶ 40    First, the policy in that case provided coverage only where liability was incurred "in rendering services for others as a licensed life, accident and health insurance *agent*, a licensed life, accident and health insurance *general agent* or a licensed life, accident and insurance *broker*." (Emphasis added.) *Id*. at 412. Thus, coverage was only available for services rendered "for others" as an insurance agent, general agent, or broker. Here, coverage is provided for liability incurred "in the rendering or failure to render professional services," which include NIP's role as an insurance wholesaler, insurance managing general agent, insurance general agent, insurance underwriting manager, insurance program administrator, insurance agent, insurance broker, surplus lines insurance broker, insurance consultant, insurance claims administrator, insurance appraiser, and insurance premium financier. These various services are left completely undefined by the policy. Thus, whatever the *Westport* decision may have to say about coverage for NIP's role as an insurance agent or broker, that case did not concern professional services such as insurance wholesaler, underwriting manager, program administrator, and insurance consultant.

¶ 41    Furthermore, we acknowledge that both the policy in *Westport*, and the policy here provide coverage for an invasion or violation of privacy. *Westport,* 387 Ill. App. 3d at 410. We also note that, in both cases, it was under this provision that coverage was sought for damages allegedly caused by unsolicited fax advertisements. *Id*. However, unlike the policy

-11-

in *Westport*, the coverage for violation of privacy in this case is specifically included as only one of a number of other covered acts contained in the policy's definition of "*Advertising Liability*." Other acts included in that definition include injuries arising out of "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's organization, products or services" or "[m]isappropriation of advertising ideas or style of doing business." Indeed, there is no indication in the *Westport* opinion that the policy in question separately made provision for these types of "advertising" liability at all. The court's opinion certainly did not consider any such language. In addition, the *Westport* decision includes no indication that the policy in question also contained an exclusion that specifically excluded only certain types of advertising from coverage. *Id.* at 410. That is *not* the case here.

¶ 42    Indeed, the exclusion in the policy at issue here is key to both understanding the scope of the coverage provided to NIP and to resolving the choice of law and summary judgment questions. However, none of the parties addressed the exclusion in their opening briefs before this court. Neither the parties nor the circuit court addresses the fact that, despite any general rule regarding the limited scope of professional liability policies, this specific policy provides coverage for "*Advertising Liability*" incurred in the rendering or failing to render professional services and expressly excludes *only* "intentionally false, misleading, deceptive, fraudulent, or misrepresenting statements in advertising the insured's own product or service." NIP's policy thus clearly contemplates that claims arising out of other types of advertisements for its products and services *would* be covered as a liability incurred in the rendering or failing to render a professional service.

¶ 43    We observe that both New Jersey and Illinois courts construe policies as a whole. *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007) ("Because the court must assume that every provision was intended to serve a purpose, an insurance policy is to be construed as a whole, giving effect to every provision ***."); *Homesite Insurance Co.*, 992 A.2d at 807 ("We will not read one policy provision in isolation when doing so would render another provision meaningless."). Furthermore, both states recognize that policy exclusions limit coverage that is otherwise provided. *Rich*, 226 Ill. 2d at 379 (quoting *General Insurance Co. of America v. Robert B. McManus, Inc.*, 272 Ill. App. 3d 510, 514 (1995) (" 'An exclusion in an insurance policy serves the purpose of taking out persons or events otherwise included within the defined scope of coverage.' ")); *Atlantic Mutual Insurance Co. v. Hillside Bottling Co.*, 903 A.2d 513, 519 (N.J. Super. Ct. App. Div. 2006) (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 790 (N.J. 1979) (" 'The limitations on coverage are set forth in the exclusion clauses of the policy, whose function it is to restrict and shape the coverage otherwise afforded.' ")).

¶ 44    If the exclusionary language of NIP's policy is to have any meaning at all, the language of the policy's initial insuring agreement *must* include NIP's advertising for its various insurance-related functions within the scope of coverage for liability incurred in the rendering or failure to render one of its host of listed professional services. Because the language of the policy excludes coverage only for specific types of advertising, but does not exclude the types of advertising alleged in the underlying complaint, we must find that NIP's insuring agreement at least potentially covers the allegations contained in Mr. Brodsky's

underlying complaint under either New Jersey or Illinois law. As our supreme court has stated, an "exclusion would be superfluous if it limited losses which the policy's general insuring clause did not cover." *Rich*, 226 Ill. 2d at 379.

¶ 45    Therefore, as there is no outcome-determinative difference between the law of the two states in question, we find that Illinois law applies to the question of Landmark's right to summary judgment under count I of its declaratory judgment action. However, because our analysis reveals that Illinois law recognizes at least the potential for coverage of the Brodsky suit under the specific language of NIP's policy, we must reverse the circuit court's grant of summary judgment in favor of Landmark pursuant to count I of its complaint.

¶ 46    Having determined the circuit court improperly granted Landmark's motion for summary judgment, we must now consider whether the circuit court should even have reached that issue because it should have instead granted NIP's *forum non conveniens* motion, its motion to dismiss or stay pursuant to the *Peppers* doctrine, or its motion for discovery.

¶ 47                    B. NIP's *Forum Non Conveniens* Motion

¶ 48    The *forum non conveniens* doctrine is an equitable doctrine grounded in general considerations of " 'fundamental fairness and sensible and effective judicial administration,' " allowing the court to decline jurisdiction in the exceptional case where a trial in another forum with proper jurisdiction and venue would better serve the ends of justice. *First American Bank v. Guerine*, 198 Ill. 2d 511, 515 (2002) (quoting *Adkins v. Chicago, Rock Island & Pacific R.R. Co.*, 54 Ill. 2d 511, 514 (1973)). Our supreme court has "repeatedly noted that the *forum non conveniens* doctrine gives courts discretionary power that should be exercised *only in exceptional circumstances* when the interests of justice require a trial in a more convenient forum." (Emphasis in original.) *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442 (2006). A circuit court's ruling on a *forum non conveniens* motion is given considerable discretion and will not be reversed absent an abuse of discretion. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176-77 (2003). An abuse of discretion exists where no reasonable person would agree with the circuit court's ruling. *Id*. at 177.

¶ 49    In deciding whether the doctrine should apply, the court must balance private interest factors affecting the convenience of the litigants and public interest factors affecting the administration of the courts. *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 223-24 (1987). "The private interest factors include: (1) the parties' convenience; (2) the ease of access to sources of testimonial, documentary and real evidence; (3) the ability to secure attendance of unwilling witnesses with compulsory process; (4) the cost to procure the attendance of willing witnesses; and (5) all other matters that make the trial easy, inexpensive and expeditious. The public interest factors include: (1) the interest in deciding local controversies locally; (2) the unfairness of imposing trial costs and jury duty on citizens of a county with little connection to the action; and (3) the administrative difficulties that arise from adding litigation to an already-congested court docket rather than handling it in its venue of origin." *Gundlach v. Lind*, 353 Ill. App. 3d 677, 682 (2004) (citing *Dawdy*, 207 Ill. 2d at 172-73).

¶ 50      A court must consider all of the relevant factors, without emphasizing any one single factor, and each case must be decided on its own set of unique facts. *Langenhorst,* 219 Ill. 2d at 443. "The burden is on the defendant to show that relevant private and public interest factors 'strongly favor' the defendant's choice of forum to warrant disturbing plaintiff's choice." *Id.* at 444 (quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107 (1990)). Furthermore, when the plaintiff chooses as a forum his home state or the site of the accident or injury, it is reasonable to assume this choice is convenient because the litigation will be decided at home. *Dawdy*, 207 Ill. 2d at 173. However, a nonresident plaintiff's choice deserves less deference. *Id.* at 173-74.

¶ 51      NIP first asserts that the circuit court's denial of the *forum non conveniens* motion should be reversed because the court did not provide a detailed record of its analysis. NIP notes that, following the parties' arguments at the hearing on the motion, the trial court succinctly stated: "I have given it a balancing analysis. I would cite the case of Gundlach ***. Based on that analysis I am going to deny the motion to transfer based on the theory of forum nonconvenience [*sic*]." NIP asserts that such a limited record is contrary to our supreme court's statements in *Guerine* ("We urge our trial courts to give more careful consideration to *forum non conveniens* motions and to leave a better record of their analyses."). *Guerine*, 198 Ill. 2d at 520.

¶ 52      However, NIP has not cited any authority, nor is this court aware of any authority, supporting the proposition that a circuit court's ruling on a *forum non conveniens* motion must be reversed solely for an inadequate record of its analysis. Moreover, the record reveals that the parties presented detailed arguments regarding all the relevant factors to the circuit court before it explicitly indicated it had applied the required balancing analysis in denying NIP's motion. Most importantly, the record establishes the circuit court did not abuse its discretion in denying NIP's motion to transfer.

¶ 53      We also reject NIP's assertion that Landmark's choice of Cook County, Illinois, as the proper forum for this suit is entitled to no deference because Landmark's evident "forum shopping" is established by the fact that neither NIP nor Landmark is a resident of Illinois and the acts giving rise to this action did not arise here. "[S]uits on insurance contracts are ordinarily considered transitory actions which may be brought wherever jurisdiction of the parties may be obtained, regardless of where the contract was made or was to be performed." *Reagor v. Travelers Insurance Co.*, 92 Ill. App. 3d 99, 104 (1980). This action was brought in the forum where the underlying action was pending, and where jurisdiction over all relevant parties was obtainable. Furthermore, even where the plaintiff's choice of forum is somehow suspect, "the deference to be accorded is only *less*, as opposed to *none*, and the test is still whether the relevant factors, viewed in their totality, strongly favor transfer to another forum." (Emphases in original.) *Elling v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 311, 318 (1997).

¶ 54      With respect to the private factors, NIP first asserts that New Jersey would be a more convenient forum for the parties. While New Jersey may be more convenient for NIP, it is not evident that New Jersey would be more convenient than Illinois for the other parties. Brodsky resides in Illinois and Landmark *itself* brought this suit in Illinois. See *Guerine*, 198 Ill. 2d at 518 (noting a defendant must show the plaintiff's chosen forum is inconvenient to

it and another forum is more convenient to all parties; however, a defendant cannot assert the plaintiff's chosen forum is inconvenient to the plaintiff). Furthermore, while NIP's employees and documents, along with the people and documents involved in procuring the Landmark policy, may be located in New Jersey, documents related to the underlying litigation are presumably located here in Illinois. In any case, it has been recognized that the "location of documents is not significant because documents can be transported with ease and at little expense." *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 834 (2006). Additionally, witnesses located in New Jersey willing to testify may do so in an evidence deposition without traveling to Illinois and the ability to compel the testimony of any potential New Jersey witness unwilling to testify in Illinois is not relevant here, as NIP has not identified any such witnesses. *Cradle Society v. Adopt America Network*, 389 Ill. App. 3d 73, 76-77 (2009).

¶ 55    As to the public factors, NIP contends Illinois has no interest in this coverage suit involving a New Jersey insured and an Oklahoma insurer. This argument fails to consider that this suit involves the availability of defense and indemnity coverage for an underlying suit that was filed in Illinois, alleges acts occurring in Illinois, and asserts causes of action arising under Illinois law. Most importantly, the plaintiff in that underlying action–Brodsky–is both a resident of Illinois and is a *named defendant in this action*. Illinois has a strong interest in the outcome of this litigation, and this interest undermines NIP's further arguments regarding the unfairness of imposing the costs of this litigation on our courts.

¶ 56    In sum, Landmark's choice of Illinois as the proper forum for this suit was entitled to deference and NIP has failed to establish that the relevant private and public factors strongly favor its choice of New Jersey as a more appropriate forum. The circuit court therefore properly denied NIP's *forum non conveniens* motion.

¶ 57                              C. Motion to Dismiss or Stay

¶ 58    We next address the denial of NIP's motion to dismiss or stay this action. We first note that NIP's motion in the circuit court sought to dismiss or stay Landmark's suit in total. However, on appeal, NIP and Mr. Brodsky only provide arguments with respect to counts I and IV of Landmark's complaint. Supreme Court Rule 341(h)(7) provides an appellant's brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied upon." Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). That rule further provides "[p]oints not argued are waived." *Id*. As such, we limit our discussion to the issues and arguments NIP and Mr. Brodsky have actually presented, *i.e.*, the propriety of the circuit court's failure to dismiss or stay counts I and IV of Landmark's complaint.

¶ 59    Under the *Peppers* doctrine, "it is generally inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation." *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 501 (2006) (citing *Peppers*, 64 Ill. 2d at 197). This proscription specifically precludes determination of any ultimate facts upon which liability or recovery might be predicated in the underlying

-15-

case. *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 306-07 (1983) (citing *Peppers*, 64 Ill. 2d 187, and *Thornton v. Paul*, 74 Ill. 2d 132 (1979)). Included within the doctrine is the notion that determining the applicability of an insurance policy's intentional acts exclusion is premature where that determination might preclude the insured from asserting–in the underlying litigation–that its conduct was not intentional. *Id*.

¶ 60    As described above, count I of Landmark's complaint asserts that its policy provided no coverage for the Brodsky suit because the sending of unsolicited fax advertisements did not constitute the "rendering or failure to render professional services." NIP and Mr. Brodsky assert that resolution of this question will necessarily require an improper presumption or a determination that all of the faxes alleged in the underlying suit were advertisements, as well as a determination that such advertising falls outside of its covered professional services. NIP and Mr. Brodsky contend such questions are issues that must be determined in the underlying litigation. Landmark responds that, resolving whether NIP's fax advertisements arose out of its professional services so as to trigger coverage will have no impact upon the ability of Brodsky to establish liability in the underlying litigation or on NIP's potential defenses to such liability.

¶ 61    The parties' dispute on this issue clearly invokes the analytical approach of the *Westport* decision and seems to presume that, if NIP's faxes are advertisements, they are not covered under NIP's policy. However, as detailed above, count I of Landmark's complaint can be resolved by simply comparing the allegations of the Brodsky complaint with the language of NIP's policy. Such a comparison reveals the complaint *alleges* that the faxes were unsolicited advertisements, and the plain language of the policy *potentially* provides coverage for damages caused by such advertisements. This determination can be made without ultimately deciding, in resolving the propriety of summary judgment, the nature of the alleged faxes or the exact context in which they were sent. *Valley Forge Insurance Co.*, 223 Ill. 2d at 363 (a duty to defend exists if even a single claim, without regard to the claim's actual merit, potentially falls within the policy's coverage). Therefore, we find that NIP was not entitled to the dismissal or stay of count I of Landmark's complaint.

¶ 62    Count IV, however, asserted that there was no coverage "[t]o the extent the Brodsky Complaint alleges dishonest, fraudulent, criminal or intentional acts, errors omissions committed by or at the direction of the Insured" because of the policy's intentional acts exclusion. It is clear that any determination of the applicability of Landmark's intentional acts exclusion is premature while the Brodsky complaint is ongoing. As NIP and Mr. Brodsky note, whether or not NIP's conduct was intentional is, among other things, directly relevant to whether it can be held liable for the intentional tort of conversion. *In re Thebus*, 108 Ill. 2d 255, 259 (1985) (quoting Restatement (Second) of Torts § 222A (1965) (conversion requires an " 'intentional exercise of dominion or control over a chattel' ")). It is also relevant to whether or not NIP is subject to treble damages pursuant to the federal TCPA claim in the underlying suit. See 47 U.S.C. § 227(b)(3)(C) (2006) (providing for the possibility of treble damages if actions were "knowing"). Under the *Peppers* doctrine, therefore, the circuit court improperly failed to dismiss or stay count IV of Landmark's suit.

¶ 63                              D. Request for Discovery

¶ 64        Finally, we reach the question of whether the circuit court improperly denied NIP's request for discovery prior to responding to Landmark's motion for summary judgment. NIP asserts that such discovery was required for it to adequately respond to Landmark's motion and it was prejudiced by the circuit court's refusal to grant its request. In light of our reversal of the circuit court's summary judgment order on the record before us, however, NIP's assertions of prejudice are irrelevant and this issue has been rendered moot. *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006) (an issue is considered moot "where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party").

¶ 65                                 III. CONCLUSION

¶ 66        For the foregoing reasons, we find that the circuit court properly denied NIP's *forum non conveniens* motion and properly refused to dismiss or stay count I of Landmark's complaint. However, it erred in denying NIP's motion to dismiss or stay count IV of Landmark's complaint and improperly granted summary judgment in favor of Landmark pursuant to count I of its declaratory judgment complaint.

¶ 67        Having determined the issues properly raised on appeal, we feel it necessary to state what we do *not* decide in this opinion. While Landmark's complaint contains eight counts, summary judgment was requested and granted only as to count I. Our resolution of the propriety of summary judgment therefore concerns count I only, and we express no opinion on the merits of the remaining counts of Landmark's complaint nor any of the affirmative defenses addressed thereto. Similarly, we have addressed NIP's *Peppers* motion only with respect to counts I and IV of Landmark's complaint. Thus, this opinion expresses no opinion on the current justiciability of the remaining counts of that complaint.

¶ 68        We therefore vacate the entry of summary judgment in favor of Landmark on count I and remand for entry of an order dismissing or staying count IV and for further proceedings consistent with this opinion.

¶ 69        No. 1-10-1155, Reversed and remanded.

¶ 70        No. 1-10-1158, Affirmed in part and reversed in part; cause remanded.

¶ 71           SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

¶ 72        Landmark has filed a petition for rehearing asking this court to reconsider that portion of our original order[1] which reversed the circuit court's entry of summary judgment in its

---

[1]Throughout this supplemental opinion we refer to our original unpublished order, filed pursuant to Supreme Court Rule 23 (eff. January 1, 2011). That order has now been both modified

favor. Specifically, Landmark asserts that our original order improperly: (1) reversed the award of summary judgment on grounds never raised or argued by any party; (2) found that coverage for the Brodsky suit was *created* by an exclusion contained in the insurance policy it provided to NIP; (3) misapprehended Illinois law; and (4) otherwise failed to appreciate the true nature of the allegations contained in the Brodsky suit or the limitations inherently contained in the language contained in the policy issued to NIP. While we have modified our original order and issued this supplemental order in order to address the issues raised in Landmark's petition, we deny its request for rehearing.

¶ 73                                 I. Unargued Basis for Reversal

¶ 74    Landmark first notes that our determination of the scope of coverage provided by NIP's insurance policy was based, in part, upon our consideration of a policy exclusion for certain types of "[f]alse advertising or misrepresentation in advertising." However, as we noted in our original order, neither the parties in this case nor the circuit court ever addressed the potential import of the language of that exclusion. Landmark now asserts that, because this issue was never raised or argued, it was improper for this court to consider this particular policy language *sua sponte*. Landmark specifically contends that our consideration of this policy language was improper because: (1) NIP and Brodsky waived this issue by never raising it; (2) such consideration of an unraised and unargued issue transformed this court into an advocate for NIP and Brodsky; and (3) Landmark was thus denied its due process right to brief and argue this unraised and unargued issue. We disagree with each of these contentions.

¶ 75    First, we note that Landmark is certainly correct that Supreme Court Rule 341(h)(7) (eff. July 1, 2008) clearly provides it was the responsibility of Brodsky and NIP to raise this policy language and "[p]oints not argued are waived." However, as our supreme court has also clearly stated, "[w]aiver limits the parties' ability to raise an issue, not this court's ability to consider an issue." *People v. Donoho*, 204 Ill. 2d 159, 169 (2003). Indeed, Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) specifically provides this court may "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." As such, the fact that no party raised the applicability of specific policy language is not a limit on our authority to consider the language of the exclusion in the course of our *de novo* analysis of the policy as a whole.

¶ 76    With respect to the argument that our consideration of this language was a misuse of this court's authority, Landmark notes that our supreme court has stated: "Illinois law is well settled that other than for assessing subject matter jurisdiction, 'a reviewing court should not normally search the record for unargued and unbriefed reasons to reverse a trial court judgment.' " (Emphasis omitted.) *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978)). We reject the contention that our consideration of the exclusionary language contained in the insurance policy at issue here

_____

upon the denial of rehearing and published.

violates this principle.

¶ 77 While it is true that the parties focused their arguments on the specific language contained in the "Covered Services" portion of the insuring agreement, we again note that our review in this case is *de novo* and we must consider the insurance policy in question "as a whole." *Crum & Forster*, 156 Ill. 2d at 390-91. Indeed, " '[a]ll the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists.' " *Rich v. Principal Life Insurance Co.*, 226 Ill. 2d 359, 371 (2007) (quoting *United States Fire Insurance Co. v. Schnackenberg*, 88 Ill. 2d 1, 5 (1981)).

¶ 78 We also note that in his opening and reply briefs before this court, Brodsky made the argument that Landmark's arguments rendered the policy's coverage illusory or meaningless. Specifically, Brodsky argued that "if advertising cannot be a professional service, the policy's specific grant of 'Advertising Injury' liability [coverage] is illusory." Similarly, Brodsky argued that "[e]ither NIP Group's publications of material that violated Brodsky's and the underlying class's right to privacy [citation] are covered, or the grant of coverage for such injuries is illusory and meaningless and constitutes fraud." Indeed, similar arguments were also contained in affirmative defenses filed by NIP in the circuit court. Our resolution of this case addressed these very arguments in the context of construing the policy issued to NIP as a whole, and as such we did not reach any issues not raised by the parties themselves. However, our resolution of this appeal was made in light of the language contained in the *entire* insurance policy–including the exclusionary language. As the authority cited above establishes, not only was it within our authority to consider all of the language contained in the policy to correctly address the coverage issue before us, it was in fact our duty to do so.

¶ 79 Landmark's petition for rehearing also argues that it was "a violation of [its] due process interests when this Honorable Court recast the questions presented for review and reversed summary judgment on issues not discussed by the parties without providing an opportunity for briefing on points not argued." However, after our original order was filed in this matter, Landmark filed a timely petition for rehearing. Pursuant to Supreme Court Rule 367(d) (eff. Dec. 29, 2009), this court then allowed Brodsky and NIP to file a written answer to the petition and Landmark filed a written reply. In these filings, the parties have had an opportunity to fully address the issues Landmark asserts were improperly considered in our original order, and we have fully considered these arguments in both our modified opinion and in this supplemental opinion. In such circumstances, Landmark " 'has not been denied an opportunity to address [its] contentions to this court,' " its arguments have been fully considered and rejected, and it has therefore not been denied its due process rights. *Champaign National Bank v. Landers Seed Co.,* 194 Ill. App. 3d 1019, 1024 (1990) (quoting *Phelps v. O'Malley*, 187 Ill. App. 3d 150, 153 (1989)).

¶ 80 II. There Has Been No Finding That a Policy Exception Creates Coverage

¶ 81 Landmark's next contention is that, in considering the language contained in the policy advertising exclusion, this court found that the "policy exclusion operates as its own separate insuring agreement that is not otherwise subject to any other terms, limitations, or conditions

-19-

of the policy, and instead is the premier coverage grant." Landmark then asserts that this finding was improper, citing to cases holding that neither a policy exclusion itself (*Continental Casualty Co. v. Pittsburgh Corning Corp.*, 917 F. 2d 297, 300 (7th Cir. 1990)) nor an exception to a policy exclusion (*Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775, 789 (2010)) can *create* insurance coverage where none otherwise exists. We fully accept these as valid principles of insurance policy construction. However, we reject the notion that our original order violated such principles in any way.

¶ 82    Indeed, in no way did our original order reflect a finding that the exclusionary language contained in the policy at issue here somehow trumped the language contained in that policy's insuring agreement. We simply found that the language contained in the exclusion *informed* our determination of the scope of the coverage contained in the initial insuring agreement.

¶ 83    Just as in the very case cited by Landmark, we considered the language contained in the exclusion "in light of the overriding principle to construe the policy as a whole" and the notion that "[a] policy must not be interpreted in a manner that renders provisions of the contract meaningless." *Bertucci,* 399 Ill. App. 3d at 789. Ultimately, we concluded that because the exclusion removed only certain types of advertising from the coverage provided in the initial insuring agreement, claims arising out of other types of advertising must have been intended to be covered as "*Advertising Liability* *** in the rendering or failing to render professional services." That includes faxes advertising the benefits of NIP's various insurance-related products and services. Any other construction would give "inordinate emphasis to an isolated portion of one sentence, contrary to the principle that policy provisions are read in light of other relevant provisions and the contract as a whole." *Id.*; *Rich*, 226 Ill. 2d at 379 ("reading the policy as a whole, the exclusion would be superfluous if it limited losses which the policy's general insuring clause did not cover"). Landmark may not agree with our construction of its policy language, but its assertions that we somehow found the exclusionary language in the policy created coverage not otherwise provided for in the initial insuring agreement either misunderstands or misstates our holding.

¶ 84          III. Our Original Order Did Not Misapprehend Illinois Law

¶ 85    Next, Landmark contends this court's decision misapprehended Illinois law in several respects.

¶ 86    First, Landmark notes that our decision relied in part upon our supreme court's decision in *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352 (2006). Landmark contends that our reliance on *Valley Forge* was misplaced, as we failed to appreciate that in that case our supreme court considered a commercial general liability policy. Specifically, Landmark asserts that *Valley Forge* is inapplicable to this case because the professional liability policy at issue here is specialized and only provides coverage for risks "inherent" in NIP's professional practice. See *Crum & Forster*, 156 Ill. 2d at 392-93. Because the language contained in our original order could possibly be read to indicate a broader reading of *Valley Forge* than we intended, we have now amended that order. As our modified order and this supplemental order should make clear, we cite to *Valley Forge* for

a very limited purpose.

¶ 87    In that case, our supreme court considered whether the policy in question provided coverage for a claim that the insured sent unsolicited fax advertisements in violation of the federal Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227 (2000)). *Valley Forge,* 223 Ill. 2d at 364-65. Our supreme court found that an insurance policy which provided coverage for "advertising injury" and defined such injuries to include "material that violates a person's right of privacy" provided coverage for claims seeking to recover for unsolicited fax advertisements. (Internal quotation marks omitted.) *Id.* at 368. Specifically, our supreme court found that "the policy language 'material that violates a person's right of privacy' can reasonably be understood to refer to material that violates a person's seclusion. Unsolicited fax advertisements, the subject of a TCPA fax-ad claim, fall within this category." *Id.*

¶ 88    Our purpose in citing *Valley Forge* is clear when one considers the language of the policy in question here. As in that case, the policy here provides coverage for "*Advertising Liability*" and defines such liability to include injury arising out of "material that violates a person's right of privacy." Thus, we cited to *Valley Forge* solely as support for our finding that allegations NIP's unsolicited fax advertisements "unlawfully interrupted [Mr. Brodsky's] and the other class members' privacy interests in being left alone" fell well within this policy's definition of "*Advertising Liability*." We did not find that the *Valley Forge* decision–by itself and without consideration of the requirement that such liability be incurred "in the rendering or failing to render professional services"–mandated a finding that Landmark's professional liability policy provided NIP with insurance for the Brodsky suit. Moreover, we do not believe that our supreme court's analysis on this limited issue was dependent upon the fact that the policy in that case covered general liability, and as such we do not find *Valley Forge* distinguishable on the basis that here we address an identical definition contained within a professional liability policy.

¶ 89    Landmark also argues that our original order failed to adequately distinguish the decision in *Westport*. We continue to disagree with the assertion that the *Westport* decision governs this case, and we have expanded upon our discussion of that case in our modified order to further clarify our position.


¶ 90    IV. The Nature of the Brodsky Allegations and the Language of NIP's Policy

¶ 91    Finally, Landmark's petition for rehearing asserts that this court's original order both: (1) failed to understand the true nature of the allegations in the Brodsky suit; and (2) ignored the requirement that coverage only exists for liability arising out of conduct "in the rendering or failing to render professional services." We, again, disagree.

¶ 92    First, we find it is Landmark that fails to appreciate the nature of the conduct alleged in the Brodsky suit. In its petition, Landmark repeatedly asserts that the underlying suit seeks to recover solely for NIP's simple "ministerial act" of transmitting an unsolicited facsimile. Landmark goes even further, contending the "alleged transmission of the unwanted facsimiles in question, not the information communicated therein, gives rise to the claims" in the Brodsky suit. This is simply not the case.

¶ 93    The Brodsky suit must be "liberally construed" in favor of NIP, and Landmark "may not

justifiably refuse to defend a lawsuit against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge*, 223 Ill. 2d at 363. As we stated in our original order, the underlying suit seeks to recover for unsolicited fax *advertisements*. Indeed, count I asserts a claim pursuant to the TCPA, which expressly creates a private right of action to recover for receiving faxes containing "material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. §§ 227(a)(5), (b)(3) (2006). Additionally, count III is premised upon the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2008)) and expressly contends that Landmark's "practice of sending unsolicited faxed *advertisements* is an unfair practice under the Consumer Fraud Act." (Emphasis added.) As such, the underlying allegations comprise more than a simple "ministerial act" and do indeed depend upon the content of the faxes sent by NIP.

¶ 94 Second, we reject Landmark's assertion that our original order ignored the policy language requiring that any advertising liability be incurred "in the rendering or failing to render professional services." In making this argument in its petition for rehearing, Landmark continues to assert its position that NIP's advertisement of its various insurance-related products and services via facsimile–in light of the specialized and limited nature of professional liability policies and case law interpreting other such policies–cannot amount to an activity "in the rendering or failing to render professional services." We do not ignore this policy language, nor do we ignore this argument. We simply disagree with Landmark on this point.

¶ 95 Clearly, the initial insuring agreement indicates that coverage is only provided for "*Advertising Liability* *** in the rendering or failure to render professional services." However, the policy also contains a provision specifically excluding from such coverage only "intentionally false, misleading, deceptive, fraudulent, or misrepresenting statements in advertising the insured's own product or service." As we have explained, we fail to see why the policy would exclude from coverage only certain statements made in "advertising the insured's own product or service" unless claims arising out of other types of advertisements for NIP's products and services were already covered as advertising liability incurred in NIP's rendering or failing to render one of the various professional services specifically listed in the policy. Nor has Landmark provided a reasonable alternative interpretation which accounts for *all* the language contained in the policy.

¶ 96 Thus, reading this policy as a whole, as we are compelled to do, we find that Landmark was not entitled to summary judgment on count I of its complaint for declaratory judgment. Accordingly, Landmark's petition for rehearing is denied.

¶ 97 Petition for rehearing denied.