# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Estate of Rath v. Abbott Laboratories, Inc.*, 2012 IL App (5th) 100096

---

| | |
|---|---|
| Appellate Court Caption | THE ESTATE OF ELIZABETH ELAINE RATH, a Disabled Adult, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. ABBOTT LABORATORIES, INC., Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-10-0096 |
| Filed | May 1, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a class action for consumer fraud and unjust enrichment based on defendant's marketing and sales of an enteral nutrition product, the trial court's denial of defendant's *forum non conveniens* motion was affirmed, since the total circumstances of the case did not strongly favor a transfer, especially when no single county enjoyed a predominant connection to the litigation and the controversy arose from a government investigation that originated in the county where the suit was filed. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 04-L-44; the Hon. Michael J. O'Malley, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

W. Jason Rankin and Larry E. Hepler, both of Hepler Broom, LLC, of
Edwardsville, George C. Lombardi, Erik W. Snapp, and David E.
Dahlquist, all of Winston & Strawn LLP, of Chicago, and Elizabeth
Papez, of Winston & Strawn LLP, of Washington, D.C., for appellant.

Timothy Keller and Dale J. Aschemann, both of Aschemann Keller LLC,
and John R. Patchett, of Patchett Law Office, both of Marion, Robert J.
Sprague, of Sprague & Urban, of Belleville, Charles F. Barrett, of Charles
Barrett, P.C., and Patrick M. Barrett III, of Barrett Law Office, both of
Nashville, Tennessee, and David S. Stellings and Rachel Geman, both of
Lieff, Cabraser, Heimann & Bernstein LLP, of New York, New York, for
appellee.

Panel

JUSTICE GOLDENHERSH delivered the judgment of the court, with
opinion.
Justice Stewart concurred in the judgment and opinion.
Justice Spomer specially concurred, with opinion.

**OPINION**

¶ 1     Plaintiff, the estate of Elizabeth Elaine Rath, a disabled adult, individually and on behalf
of all others similarly situated, filed suit against defendant, Abbott Laboratories, Inc. (Abbott
Laboratories or Abbott), in the circuit court of St. Clair County, Illinois. Defendant filed a
motion based on *forum non conveniens* to transfer to Lake County. The circuit court denied
the motion. On appeal, defendant raises issues as to (1) whether the trial court erred as a
matter of law in denying the motion to transfer and (2) whether the trial court abused its
discretion in denying the motion. We affirm.

¶ 2                                              FACTS
¶ 3     In the late 1990s, the United States Attorney for the Southern District of Illinois began
an investigation into sales and marketing in the enteral nutrition products industry. The
investigation was titled "Operation Headwaters." The investigation included the creation of
a fictitious undercover company named Southern Medical Distributors (Southern). Southern
solicited sales and marketing information from enteral nutrition products suppliers, including
Abbott. The office for Southern was located in Swansea, St. Clair County, Illinois.

¶ 4     On January 21, 2004, plaintiff filed her original complaint in the circuit court of St. Clair
County. Plaintiff labeled her pleading a class action complaint. Plaintiff asserted that she

brought the suit individually and as part of a class. Plaintiff labeled count I consumer fraud act (815 ILCS 505/1 (West 2004)) and count II unjust enrichment. In her complaint, plaintiff referred to the investigation by the United States Attorney and subsequent settlement agreement and stipulation of facts described below.

¶ 5    Defendant asserts that Abbott Laboratories is an Illinois corporation with its principal place of business being in Lake County, Illinois, and that Abbott Laboratories, Inc., is a Delaware corporation with Lake County, Illinois, as its principal place of business. CG Nutritionals, Inc., is a wholly owned subsidiary of Abbott. Following the Operation Headwaters investigation, CG Nutritionals, Inc., pled guilty to a count of obstruction of a criminal health care offense. Ross Products Division (Ross) is a division of Abbott Laboratories with its principal place of business in Columbus, Ohio. Ross sells therapeutic equipment, including enteral nutrition products.

¶ 6    Enteral nutrition products are for health care patients who are unable to ingest meals through normal eating. Enteral nutrition products deliver nutrients directly to the digestive system and stomach. The enteral nutritional system has three basic components. The first component is the nutritional liquid food itself. The second component is the tubing that delivers the liquid food from a plastic container to the digestive system and stomach, which component is often referred to as "pump sets" or "plastics." The third component is an electronic pump that pushes food through the pump sets at a regulated rate. During the relevant time frame, Medicare reimbursed for enteral products using a "reasonable charge" approach.

¶ 7    On June 20, 2003, Abbott, on behalf of Ross, entered into a settlement agreement with the Office of Inspector General for United States Department of Health and Human Services and the United States Attorney for the Southern District of Illinois. In the agreement, Abbott admitted that Ross marketed infusion pumps for enteral nutrition using a purchasing document that was called the "Always Lease." Under the terms of the Always Lease, Ross provided infusion pumps and, in return, suppliers agreed to buy a set amount of entire pump sets. Ross also told suppliers that they could bill Medicare for the pump sets as well as the infusion pump. According to the settlement agreement, Ross gave monetary incentives and discounts to suppliers that signed written contracts, calling the incentives "signing bonuses." In the agreement, Abbott admitted that the suppliers Ross had provided enteral nutrition infusion pumps to at no additional charge in turn billed Medicare for the pumps as well as the pump sets, and Medicare paid for the pumps and pump sets that Ross had provided under the Always Lease.

¶ 8    Under the settlement agreement, Ross agreed to pay to the United States $382,408,087. Ross also agreed to pay the participating state Medicaid programs $17,591,913. Certain aspects of the agreement were to take effect upon the completion of a plea agreement in a parallel criminal case in the United States District Court for the Southern District of Illinois where CG Nutritionals, Inc., was named as the defendant.

¶ 9    The settlement agreement referred to a stipulation of facts entered contemporaneously in a related criminal matter. According to the stipulation of facts, Ross sold providers "bundled" kits containing both pumps and pump sets as one product for a single price, but

advised providers that Medicare allowed for separate reimbursement of the pumps and pump sets. This allowed providers to receive two payments from Medicare, one for reimbursement for the pump sets that were included in the bundle with the cost of the pump and a second separate charge for the pump itself. In turn, this made it difficult for Medicare to ascertain the actual charges for the equipment. Ross often provided pumps as part of a bundled product or at no additional charge to providers in exchange for an agreement from the provider that it would purchase a minimum number of other components of the system every month. According to the stipulation, Ross offered up-front payments to some providers and, in particular, advised Southern that by calling the payments a form of bonus it would not have to be reported as a discount, thereby preventing or delaying Medicare from determining the actual price.

¶ 10    On February 7, 2005, defendant filed a motion to transfer to Lake County on grounds of *forum non conveniens*. On December 21, 2005, plaintiff filed her first amended complaint. On December 11, 2006, defendant filed another motion to transfer on grounds of *forum non conveniens*.

¶ 11    After a hearing, the circuit court entered an order denying defendant's motion to transfer. The order, entered January 28, 2010, read:

> "Cause comes on for hearing on defendant's Motion to Transfer.
>
> Even noting that the deference is 'slight,' defendant cannot maintain its burden.
>
> The purported scheme which is the basis for the civil action was discovered, investigated and presented in St. Clair County.
>
> Motion denied."

¶ 12    On April 8, 2010, this court entered an order denying defendant's petition for leave to appeal. Subsequently, the Illinois Supreme Court entered a supervisory order directing this court to vacate the order of April 8, 2010, and allow defendant's petition for interlocutory appeal. *In re Estate of Rath*, 237 Ill. 2d 558, 935 N.E.2d 517 (2010) (supervisory order). After considering defendant's appeal, this court affirms the circuit court.

¶ 13                                                  ANALYSIS

¶ 14    An equitable doctrine, *forum non conveniens* derives from "considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441, 848 N.E.2d 927, 934 (2006). Under the doctrine, a circuit court is permitted to decline jurisdiction when transfer to another jurisdiction " 'would better serve the ends of justice.' " *Langenhorst*, 219 Ill. 2d at 441, 848 N.E.2d at 934 (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310, 579 N.E.2d 857, 859 (1991)).

¶ 15    The doctrine is applicable to intrastate transfers as well as interstate grounds. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935. In both interstate and intrastate cases, the same principles govern the doctrine. *McGinty v. Norfolk Southern Ry. Co.*, 362 Ill. App. 3d 934, 936, 841 N.E.2d 987, 989 (2005); *First American Bank v. Guerine*, 198 Ill. 2d 511, 517, 764 N.E.2d 54, 58 (2002).

¶ 16    Circuit courts are vested with considerable discretion in evaluating claims of *forum non*

-4-

*conveniens*. *Langenhorst*, 219 Ill. 2d at 441, 848 N.E.2d at 934. The decision of the circuit court will be reversed only if a defendant has shown that the court abused its discretion in balancing relevant factors. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177, 797 N.E.2d 687, 696 (2003). This discretion is abused only when no reasonable person would agree with the ruling. *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934.

¶ 17    The Illinois Supreme Court has "repeatedly noted that the *forum non conveniens* doctrine gives courts discretionary power that should be exercised *only in exceptional circumstances* when the interests of justice require a trial in a more convenient forum." (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934. A defendant must show that the forum chosen by the plaintiff is inconvenient to the defendant and that another forum is more convenient to all the parties. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935. As repeated in *Langenhorst*, the test is " ' "whether the relevant factors, viewed in their totality, *strongly* favor transfer to the forum suggested by defendant." ' " (Emphasis in original.) *Langenhorst*, 219 Ill. 2d at 442, 848 N.E.2d at 934 (quoting *Dawdy*, 207 Ill. 2d at 176, 797 N.E.2d at 695, quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 108, 554 N.E.2d 209, 212 (1990)).

¶ 18    The evaluation of *forum non conveniens* for any case is unique on its facts. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935. In determining a matter of *forum non conveniens*, a circuit court is to consider all of the relevant factors and not emphasize any single factor. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935; *Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155, ¶ 50, 962 N.E.2d 562, 577. Both private- and public-interest factors are to be considered, with the circuit court evaluating the total circumstances of the case. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935.

¶ 19    The defendant has the burden of proving the doctrine should be applied. *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935; *Landmark American Insurance Co.*, 2011 IL App (1st) 101155, ¶ 50, 962 N.E.2d at 577. As was stated in *Langenhorst*:

    "The burden is on the defendant to show that relevant private and public interest factors 'strongly favor' the defendant's choice of forum to warrant disturbing plaintiff's choice." *Langenhorst*, 219 Ill. 2d at 444, 848 N.E.2d at 935 (citing *Griffith*, 136 Ill. 2d at 107, 554 N.E.2d at 212).

¶ 20    The private-interest factors include: (1) the convenience of the parties, (2) the relative ease of access to witnesses, documents, and other evidence, and (3) other practical issues related to the easy, expeditious, and inexpensive trial of a case. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 516, 764 N.E.2d at 58. Public-interest factors include: (1) the interest in having local controversies decided locally, (2) the unfairness of imposing expenses of trial and the burden of jury duty on a county with little or no connection to the litigation, and (3) relative court congestion. *Langenhorst*, 219 Ill. 2d at 443-44, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 516-17, 764 N.E.2d at 58.

¶ 21    On appeal, defendant first argues that the trial court erred as a matter of law. Defendant contends that the trial court contravened the balancing test by basing its decision on a solitary consideration. The trial court concluded that defendant could not maintain its burden, stating that "[t]he purported scheme which is the basis for the civil action was discovered,

investigated and presented in St. Clair County." Defendant asserts that this statement indicates that the trial court erred by both giving conclusive effect to a single factor and giving consideration to a factor not included in the balancing test.

¶ 22    The record does not support the conclusion that the trial court gave conclusive effect to a single factor. Undoubtedly, a circuit court is to consider all of the relevant factors and not emphasize any single factor in considering a motion based on *forum non conveniens*. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935. Furthermore, the Illinois Supreme Court has instructed "trial courts to give more careful consideration to *forum non conveniens* motions and to leave a better record of their analyses." *Guerine*, 198 Ill. 2d at 520, 764 N.E.2d at 60-61.

¶ 23    An inadequate record, however, is not itself a basis for reversal. *Landmark American Insurance Co.*, 2011 IL App (1st) 101155, ¶ 52, 962 N.E.2d at 577. The issue is not the detail of the underlying order, but whether the circuit court abused its discretion. See *Woodward v. Bridgestone/Firestone, Inc.*, 368 Ill. App. 3d 827, 838, 858 N.E.2d 897, 908 (2006); *Laird v. Illinois Central Gulf R.R. Co.*, 208 Ill. App. 3d 51, 63, 566 N.E.2d 944, 951 (1991). As was stated in *Landmark*:

> "However, [the defendant] has not cited any authority, nor is this court aware of any authority, supporting the proposition that a circuit court's ruling on a *forum non conveniens* motion must be reversed solely for an inadequate record of its analysis. Moreover, the record reveals that the parties presented detailed arguments regarding all the relevant factors to the circuit court before it explicitly indicated it had applied the required balancing analysis in denying [the defendant's] motion. Most importantly, the record establishes the circuit court did not abuse its discretion in denying [the defendant's] motion to transfer." *Landmark American Insurance Co.*, 2011 IL App (1st) 101155, ¶ 52, 962 N.E.2d at 577-78.

¶ 24    Defendant proceeds to contend that the trial court's reference to the St. Clair County's connection to Operation Headwaters does not fall under one of the recognized private- or public-interest factors for evaluating claims of *forum non conveniens*. Defendant argues that the trial court actually replaced analysis of which forum was most convenient to the parties with a focus "on 'the more appropriate forum' based on 'where the cause of action arose.' " *Langenhorst*, 219 Ill. 2d at 453, 848 N.E.2d at 941.

¶ 25    The trial court's reference to the connection between Operation Headwaters and St. Clair County does not lead to the conclusion that the trial court deviated from considerations of convenience or relied solely on certain factors. While the trial court concludes with a statement about the connection between the investigation and St. Clair County, extensive memoranda before the trial court discussed the various factors of convenience. In this context, the circuit court's statement regarding the connection between Operation Headwaters and St. Clair County is an acknowledgment of how this fact is related to public-interest factors of convenience, and not appropriateness. In the end, the circuit court simply found that defendant had failed to maintain its burden.

¶ 26    Literally, the circuit court ruled that defendant failed to meet its burden. In its order, the circuit court began with the first listed private-interest factor of the convenience to the

parties. The circuit court alluded to the fact that St. Clair County was not plaintiff's home forum, noting that the deference given to plaintiff was merely "slight." The court's application of an unequal balancing test, giving less deference to plaintiff's choice of forum when it was not her home forum, was proper. See *Dawdy*, 207 Ill. 2d at 175-76, 797 N.E.2d at 695.

¶ 27    The court then proceeded to note the fundamental reason for not granting the motion. Even given a lesser weight to plaintiff's choice of forum under an unequal balancing test, defendant failed to meet the burden of showing that the proposed transfer was more convenient. On appeal, defendant again fails to display how this burden was met.

¶ 28    Weighing all of the private- and public-interest factors as a whole, this court concludes that the total circumstances of the case do not strongly favor transfer to Lake County. See *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 937. The first of the private-interest factors is the convenience of the parties. Usually a plaintiff's choice is entitled to substantial deference on the grounds that she would choose a forum convenient to her. *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 938.

¶ 29    In this case, however, plaintiff's choice is not the county of her residence. Defendant contends that plaintiff's choice should be viewed with skepticism, particularly considering plaintiff's putative status as class representative. Defendant asserts that it is reasonable to assume that plaintiff " 'engaged in forum shopping to suit [her] individual interests, a strategy contrary to the purposes behind the venue rules.' " *Dawdy*, 207 Ill. 2d at 174, 797 N.E.2d at 694 (quoting *Certain Underwriters at Lloyds, London v. Illinois Central R.R. Co.*, 329 Ill. App. 3d 189, 196, 768 N.E.2d 779, 785 (2002)). *Dawdy* proceeded to point out that the zeal of plaintiffs in trying to find a favorable forum " 'is matched only by defendants' efforts in seeking to avoid such fora.' " *Dawdy*, 207 Ill. 2d at 174, 797 N.E.2d at 694 (quoting *Espinosa v. Norfolk & Western Ry. Co.*, 86 Ill. 2d 111, 123, 427 N.E.2d 111, 117 (1981)).

¶ 30    In the end, when plaintiff chooses a forum that is not her home, she is entitled to less deference. *Dawdy*, 207 Ill. 2d at 173-74, 797 N.E.2d at 694; *Langenhorst*, 219 Ill. 2d at 448, 848 N.E.2d at 938. Illinois courts apply an unequal balancing test requiring defendants to show that the factors strongly favor transfer even in instances where the plaintiff chooses a forum that is not her home. *Dawdy*, 207 Ill. 2d at 175-76, 797 N.E.2d at 695. *Dawdy* explained:

"  'Under our current *forum non conveniens* analysis, deference to the plaintiff's choice of forum is but one factor, along with other relevant private and public interest factors, to be considered in the balancing process. The deference given to plaintiff's choice of forum is a factor which may be given more or less weight within the test, depending on whether the plaintiff is a resident of the forum selected. In deciding a *forum non conveniens* motion, a court is to take all the relevant factors into account, giving each factor, including plaintiff's choice of forum, proper deference or weight under the circumstances. If the plaintiff is foreign to the forum selected, the forum choice should be given less deference than it would be given if the plaintiff were a resident of the forum selected. The test, then, is whether the relevant factors, viewed in their totality, strongly

favor transfer to the forum suggested by defendant.

> By giving plaintiff's choice of forum more or less weight within the formula, the current test takes into account the plaintiff's status as a resident or a nonresident of the forum chosen. We are satisfied that the current test ensures that a nonresident plaintiff's choice of forum will not be accorded undue deference ***.' " *Dawdy*, 207 Ill. 2d at 175-76, 797 N.E.2d at 695 (quoting *Griffith*, 136 Ill. 2d at 107-08, 554 N.E.2d at 212).

¶ 31　Defendant replies that Lake County is more convenient to it and is the location of much of the potential evidence. The second private-interest factor is the relative ease of access to witnesses, documents, and other evidence.

¶ 32　Defendant asserts that because all of the Abbott documents from the Operation Headwaters investigation have been returned to the Abbott Laboratories headquarters after the settlement, all of the relevant documents that are located in Illinois are in Lake County and other potentially relevant documents, held by Ross, are in Ohio. Defendant argues that this makes the Lake County courthouse, which is less than 40 miles from its headquarters, more convenient than St. Clair County, which is more than 300 miles away. Defendant further asserts that any witnesses from the federal investigation, such as federal investigators who might be stationed in Fairview Heights and equipment suppliers in southern Illinois, are not specifically identified by plaintiff and not central to the claims in plaintiff's suit.

¶ 33　On appeal, plaintiff asserts that no single county enjoys a predominant connection to this litigation. For example, plaintiff points to the deposition and affidavit of Ellen Klaus, litigation paralegal supervisor at Abbott Laboratories, who indicated that the witnesses and documents of defendant related to the marketing and sale of enteral nutrition products were most likely located in the contract marketing department of Ross Nutritionals, which is in Columbus, Ohio. In such instances, plaintiff's chosen forum is not likely to be convenient.

¶ 34　*Guerine* held that "a trial court abuses its discretion in granting an intrastate *forum non conveniens* motion to transfer venue where, as here, the potential trial witnesses are scattered among several counties, including the plaintiff's chosen forum, and no single county enjoys a predominant connection to the litigation. The balance of factors must strongly favor transfer of the case before the plaintiff can be deprived of his chosen forum." *Guerine*, 198 Ill. 2d at 526, 764 N.E.2d at 64; see *Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 446, 887 N.E.2d 726, 730 (2008).

¶ 35　The aspect of this factor that appears to more strongly favor defendant is the location of documents. Although many documents may be in Ohio, defendant contends that any documents that might have been in St. Clair County during Operation Headwaters have since been shipped to the headquarters in Lake County. Aside from considerations of the propriety of defendant's having moved the documents in anticipation of litigation, the location of documents is not given much weight. *Woodward*, 368 Ill. App. 3d at 834, 858 N.E.2d at 905.

¶ 36　One of the public-interest factors appears to support defendant's claim. One factor in determining the merits of a claim of *forum non conveniens* is the relative congestion of the courts. Lake County does appear to be less congested. Defendant submitted as an exhibit before the trial court a table from the 2008 annual report of Illinois courts indicating that a major jury trial in St. Clair County took on average 36.6 months between filing and date of

verdict compared to 22.4 months for Lake County.

¶ 37    The weight of this factor is light. Illinois courts have considered congestion to be a relatively insignificant factor. *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 555, 607 N.E.2d 214, 217 (1992); *Prouty v. Advocate Health & Hospitals Corp.*, 348 Ill. App. 3d 490, 497-98, 810 N.E.2d 173, 179-80 (2004).

¶ 38    Other public-interest factors weigh against removal. Traditionally, the first two listed public-interest factors are the interest in having local controversies decided locally and the unfairness of imposing a burden on a forum. *Langenhorst*, 219 Ill. 2d at 443, 848 N.E.2d at 935; *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58.

¶ 39    St. Clair County has an interest in having a local controversy decided locally. The circuit court pointedly stated that this is the site of the underlying investigation. Defendant contends that the alleged conduct of defendant that was part of the Operation Headwaters investigation is not the primary factual issue in plaintiff's case. See *Golden Rule Insurance Co. v. Manasherov*, 200 Ill. App. 3d 961, 966, 558 N.E.2d 543, 546 (1990); *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 229, 506 N.E.2d 1291, 1296 (1987). This does not diminish the local origin of the controversy. Regardless of which facts are likely to be disputed at trial, the genesis of plaintiff's complaints in the investigation makes this a local controversy for St. Clair County.

¶ 40    Considering the totality of the circumstances, the trial court acted within its discretion in denying the motion to transfer. Accordingly, the order of the circuit court is hereby affirmed.

¶ 41    Affirmed.

¶ 42    JUSTICE SPOMER, specially concurring.

¶ 43    I concur in the result the majority reaches, finding that the circuit court did not abuse its discretion in denying the defendant's motion to transfer this cause to Lake County. I agree with the majority's conclusion that the failure of the circuit court to memorialize an analysis of the correct *forum non conveniens* factors in its order does not, in and of itself, merit a reversal, because this court can affirm on any basis in the record. See *Peters & Fulk Realtors, Inc. v. Shah*, 140 Ill. App. 3d 301, 307-08 (1986). I also agree with the majority's statement of the standard of review and its recognition that while the plaintiff's choice of forum, outside of her home county, is entitled to less deference, the defendant still has the burden to show that the appropriate private- and public-interest factors strongly favor transfer to its chosen forum. However, I write separately because I would analyze all of the private- and public-interest factors, and would focus my analysis differently than did the majority.

¶ 44    I begin with an outline of the private- and public-interest factors that must be considered. The private-interest factors are: (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 443 (2006) (quoting *First American Bank v. Guerine*, 198

Ill. 2d 511, 516 (2002)). The public-interest factors are: (1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets. *Langenhorst*, 219 Ill. 2d at 443-44 (citing *Guerine*, 198 Ill. 2d at 516-17). It is important to note that in a class action wherein the class has not been certified, the *forum non conveniens* analysis must focus on the cause of action of the named plaintiff only, rather than the cause of action of a nationwide class of individuals similarly situated. See *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 165 (2005). With these factors and standards in mind, I would address each factor in turn.

¶ 45        Beginning with the convenience of the parties themselves, it is apparent that the plaintiff chooses to litigate in St. Clair County and the defendant chooses to litigate in Lake County. While it is obvious that Lake County would be more convenient to the defendant, it is hard to imagine that Lake County would be more convenient to the plaintiff, an estate located in Jackson County, which is much closer in proximity to St. Clair County than Lake County. For this reason, I would find that the convenience of the parties is evenly split between the two counties and does not strongly favor transfer to Lake County.

¶ 46        As previously mentioned, when analyzing the second private-interest factor, the relative ease of access to witnesses, documents, and other evidence, as between the plaintiff's chosen forum, St. Clair County, and the defendant's choice, Lake County, the focus should be limited to those witnesses and documents that would be relevant to the plaintiff's claim that she individually was defrauded by the defendant's billing practices relative to her purchase of feeding equipment and supplies. While the defendant argues that its employees and many of its documents are located in Lake County, and thus Lake County would be more convenient for it, it appears that the plaintiff's witnesses, who may substantiate and document the circumstances surrounding her purchase of feeding equipment and supplies from the defendant, would be located in Jackson County, where she was housed during her convalescence, which is closer in proximity to St. Clair County. Because it appears that the documents and witnesses relative to the named plaintiff's claim of fraud are scattered, with some documents and witnesses located much closer to St. Clair County than Lake County, I would find that this factor does not strongly favor Lake County over St. Clair County.

¶ 47        With regard to the third private-interest factor, which evaluates other practical problems that may aid litigation, there appears to be no strong reason to favor Lake County over St. Clair County. This case is not one that would necessitate a jury view of an accident scene. The defendant has counsel in Lake County and also local counsel in Edwardsville, which is in close proximity to St. Clair County. The plaintiff's attorneys are located in Marion, which is closer to St. Clair County than to Lake County. For all of these reasons, it does not appear that the private-interest factors strongly favor Lake County over St. Clair County.

¶ 48        Moving to the public-interest factors, I begin with the interest in deciding local controversies locally. I disagree with the majority that St. Clair County has a local interest in the named plaintiff's fraud case. If the defendant had requested transfer to Jackson County, where the plaintiff was allegedly defrauded, I would more likely find that this factor strongly favored Jackson County. However, as between Lake County, where the defendant is

headquartered, and St. Clair County, where the defendant does business, I would find that the interest in deciding local controversies locally is equal. I would reach the same conclusion with regard to the public-interest factor focusing on the unfairness of imposing jury duty and trial expense on a county that is not connected to the litigation. With regard to the public-interest factor focusing on the relative court congestion between Lake County and St. Clair County, based on the evidence presented I would find that this factor slightly favors Lake County. However, because I believe the private-interest factors and the remaining public-interest factors are split evenly between Lake County and St. Clair County, I do not believe that the fact that the public-interest factor focusing on court congestion favors Lake County is enough to conclude that the circuit court abused its discretion in denying the motion to transfer because I cannot say that no reasonable circuit judge would have reached the conclusion that the total weight of the factors did not strongly favor transfer. See *Langenhorst*, 219 Ill. 2d at 442.

¶ 49　　　　Finally, I would note that my concurrence is necessarily mandated by the current State of Illinois law governing venue and *forum non conveniens*–a body of law that does not lend itself to uniform application and promotes long and costly litigation processes, as is illustrated by the procedural history of the case at bar. My hope for the future is that an amendment to current law would limit venue to the county or counties where the accident or transaction giving rise to the cause of action occurred, which would eradicate the practice of forum-shopping and eliminate the need for costly *forum non conveniens* litigation completely. However, under current law, in a case such as this, where the plaintiff chooses a forum closer to the county of her residence, and the county where her cause of action arose, than the defendant's choice, I cannot find an abuse of discretion in the circuit court's refusal to transfer. For these reasons, I would affirm the order of the circuit court.