2025 IL App (1st) 232071-U
No. 1-23-2071

FIRST DIVISION
February 18, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN RE PARENTAGE OF: | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois, |
| M.A., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| v. | ) | No. 23 D 80121 |
| | ) | |
| A.A., | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | The Honorable |
| | ) | Maritza Martinez, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

## ORDER

¶ 1    *Held*:    We affirm the circuit court's order declining to exercise jurisdiction in the parties' custody dispute upon concluding that Illinois was an inconvenient forum and a New York court was more appropriate.

¶ 2    In this child custody dispute between petitioner-appellant M.A. (petitioner) and respondent-appellee Albert Aquino (respondent), petitioner appeals from the circuit court's order

declining to exercise jurisdiction due to *forum non conveniens*, after finding New York state was a more appropriate forum. For the following reasons, we affirm the circuit court.

¶ 3                                      BACKGROUND

¶ 4      This is a custody dispute between parents in different states that it is subject to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 750 ILCS 36/101 *et seq.*

¶ 5      The parties, who were never married, are the parents of two male children, who were born in September 2015 and November 2021. It is undisputed that from the time of their births until March 2022, the children resided together in New York.

¶ 6      In March 2022—when the older child was six years old and the younger child was approximately four months old—the petitioner relocated with the children to Chicago. Their father, respondent, remained in Queens, New York.

¶ 7      The record reflects that the petitioner was hospitalized for mental health issues in Chicago in August 2023, after which respondent took possession of the children. The record indicates that the children have remained with their father in New York since that time.

¶ 8      On August 16, 2023, respondent filed a petition in Family Court of the County of Queens, New York (the "New York court"). However, that New York court filing is not in the record in this appeal.

¶ 9      The record indicates that the New York court appointed an "attorney referee," Natasha McDougall, to preside over the matter[1]. The New York court also appointed an attorney for the children, Marisa Presitanni.

---

[1] The New York City Family Court website refers to the role of a "Court Attorney Referee" and states "Some cases such as custody, visitation and orders of protection are conducted by a referee who may hear and decide the case." https://ww2.nycourts.gov/COURTS/nyc/family/whoswho.shtml#ref

¶ 10    On September 7, 2023, petitioner commenced proceedings in Illinois by filing a "Petition for Allocation of Parental Rights and Responsibilities" in the Domestic Relations Division of the Circuit Court of Cook County. In that petition, she alleged that the children had resided solely with her from March 2022 to August 2023, until respondent took the children to New York and refused to return them. She sought sole possession and decision-making authority for the children.

¶ 11    On September 8, 2023, petitioner filed an "Emergency Petition for Immediate Return of Children to Illinois" pursuant to the UCCJEA. In that petition, she alleged that Illinois was the children's home state pursuant to the UCCJEA, as they had continuously resided in Illinois more than six months preceding the filing of the petition. She stated the children had lived with her for their entire lives, including the 18 months they lived with her in Chicago.

¶ 12    The UCCJEA petition also alleged that the respondent had a history of "acting physically" toward the elder child, and that he had physically abused petitioner. She stated that her move to Chicago in 2022 was "in consideration of [respondent's] violence and the safety of the minor children." Petitioner stated that in March 2023, respondent had come to her residence and "was demonstrating angry and physical behavior, causing her to call the police."[2]

¶ 13    On September 11, 2023, the circuit court appointed attorney Annette Fernholz as the children's guardian *ad litem* (GAL).

¶ 14    The circuit court subsequently arranged for a "conference pursuant to UCCJEA" involving the New York court, "to determine the home state of the minor children."

---

[2] The record on appeal includes a copy of a Chicago police report indicating that on March 29, 2023 while respondent was "in town from New York to assist [petitioner] in child care," the parties had a "verbal dispute." Petitioner told responding officers that respondent "began to slam the front door, br[oke] a baby gate" and "attempted to stop her from leaving the residence by holding on to her" and "attempt[ed] to bear hug her." The report reflects that the petitioner "did not wish to sign complaints", and there is no indication that father was arrested.

¶ 15    On September 15, 2023, the circuit court held a Zoom conference that was attended by the New York attorney referee, the children's New York appointed counsel, the GAL, and the parties' counsel.

¶ 16    During the conference, the GAL reported that petitioner had lived in Chicago with the children since March 2022. The GAL indicated that in July 2023, the respondent had "possession of the older child for summer vacation," with the understanding that the child would be returned to petitioner around August 9, 2023. However, petitioner was hospitalized for mental health issues, after which respondent came to Chicago to get the younger child. Both children had since stayed with respondent in New York. The GAL indicated that petitioner was "still undergoing treatment," although the GAL did not have access to her medical records.

¶ 17    During the September 15 conference, the court asked petitioner if she had received a diagnosis. She stated she was diagnosed as "possibly bi-polar and a lot of PTSD from trauma that [father] has put upon me through the years." She stated she was compliant with her doctor's orders regarding medication.

¶ 18    In the conference, the circuit court and the New York attorney referee expressed agreement that Illinois was the home state under the UCCJEA. However, the circuit court remarked that the GAL had yet been able to complete a full investigation, including review of pertinent medical records. The court indicated that it would ask the parties to sign releases for school and medical records.

¶ 19    On September 15, 2023, the circuit court entered a corresponding written order finding that Illinois was the home state of the children, but there was an "issue as to whether New York may have temporary emergency jurisdiction that may be determined at the next UCCJEA conference."

¶ 20    On October 5, 2023, the court convened another conference via Zoom involving the New York attorney referee, the children's New York attorney, the GAL, the parties, and their counsel.

¶ 21    During the conference, the circuit court indicated it had received a memorandum of law from the respondent's attorney "in support of Illinois declining jurisdiction" as an inconvenient forum. The petitioner's attorney indicated that the respondent's submission contained many factual misstatements. Petitioner's counsel further stated that petitioner had been discharged from an inpatient mental health program and was taking medications as prescribed. Her counsel argued in favor of Illinois retaining jurisdiction, emphasizing the children were enrolled in school and daycare in Illinois before they were taken back to New York in summer 2023.

¶ 22    Petitioner's counsel also averred that petitioner has less earning capacity than respondent and argued that it would be a financial burden for her to "fly out to New York on a regular basis when the children have resided [in Illinois] for the past year and a half, and she has established her life here."

¶ 23    During the same conference, the children's New York-appointed attorney informed the court that she had interviewed the parties' elder child, who was then 8 years old. According to the New York attorney, the child indicated that he missed his mother (petitioner) and wanted her to "come to New York to visit him, but he does wish to stay with his father." The child had witnessed verbal arguments between his parents, but he did not indicate any physical altercations. The child also indicated that when he lived with his mother in Chicago, he was frequently late to school and "said something to the effect that his mother wouldn't wake up when he was in Chicago going to school."

¶ 24    During the same conference, the GAL reported that she had interviewed several people, including the parties and some of their family members, and that she had "zoomed with the

children in the father's presence." The GAL had reviewed the older child's school records, which indicated that he was frequently late, with approximately 77 "tardies" the previous year.

¶ 25     The GAL also said that she had reviewed the petitioner's medical records and summarized her findings about how the children came to be taken back to New York. The GAL reported that around August 9, 2023, respondent notified Chicago Police "about some concerns" for the younger child. At that time, the older child was already in New York to visit petitioner during summer break.  Chicago Police found petitioner and the younger child in a parked car, after which petitioner was transported to a hospital for an involuntary psychiatric evaluation. According to the GAL, the police report indicated the mother "felt she was being monitored" by the government, and she "expressed fear of the building manager, citing that she was getting strange air coming through the vent" that was making her ill. Around the time that petitioner was admitted to the hospital, respondent came to Chicago to pick up the younger child and returned to New York.

¶ 26     The GAL further reported that petitioner was discharged from the hospital on August 14, 2023, with "amphetamine abuse diagnosis and a paranoid schizophrenia diagnosis." Petioner checked in to the Elgin Medical Center on August 23, 2023. At the time, "she was displaying psychotic behaviors and was paranoid." Petitioner was discharged on September 1, 2023; Elgin Medical Center indicated she had a "psychotic disorder and a cannabis use disorder, which she disputes." She was prescribed olanzapine. The GAL further reported that petitioner met with a psychiatrist on September 28, 2023, who had increased her olanzapine prescription.

¶ 27     The GAL also informed the court that she spoke to the petitioner's mother. Petitioner and her mother had been "estranged" after a physical altercation in September 2022, but they had reconciled. Petitioner's mother worked five days per week but was available to watch the children

the other two days per week. The GAL stated that petitioner had a boyfriend, but they did not live together.

¶ 28    Regarding respondent, the GAL reported that he lived with his parents in New York, who were retired and watched the younger child during the day. Respondent took the older child to school in the morning, and either he or one of his parents picked the child up from school.

¶ 29    Petitioner's counsel stated that she complied with her hospital discharge instructions, she was in contact with her psychiatrist, and she was diligently looking for a treating therapist.

¶ 30    At the conclusion of the October 5 conference, the court remarked that although Illinois was the home state under UCCJEA, "the way that this case come to Illinois is that after the children spending their entire lives in New York, she decided to relocated here ***. She relocated from New York to Illinois. I consider that as relevant in my decision today. I'm considering everything."

¶ 31    The court expressed concern that petitioner had only recently reconciled with her mother, and that her mother could only help two days per week. The court noted that respondent had the help of his parents in caring for the children. It remarked that petitioner "needs some time to get better, and I don't know whether the children trigger her when things can get overwhelming."

¶ 32    The court stated it also considered the fact that both parties alleged domestic violence by the other, as well as "the length of time that the children have resided outside of Illinois," both before they moved to Chicago 2022 and the "time since they were taken back to New York." The court also stated it considered the distance between the courts in Illinois and New York, as well as the parties' financial circumstances.

¶ 33    As the court circuit was discussing whether to decline jurisdiction, the New York attorney referee stated: "the majority of the witnesses and evidence in this case that will be relevant to a

finding of best interests are in the state of Illinois," such as petitioner's medical records and medical providers. The court responded:

"Thank you. But I don't see that there is an agreement between the parties in terms of which state should assume jurisdiction.

The nature and location of the evidence required to resolve the pending litigation, including testimony of the child, the ability of the court of each state to decide the issues expeditiously and the procedures necessary to present the evidence and the familiarity of the court in each state with the facts and the issues of the pending litigation. So based upon those factors, I'm declining jurisdiction under inconveniens forum."

¶ 34    Before the conclusion of the conference, the court asked the New York attorney referee if petitioner could continue to appear through electronic means in the New York proceedings:

"THE COURT:  The question is, I know that your next court date in New York is in person. Is there a way for [petitioner] to continue to use the zoom platform to appear before you?

[ATTORNEY REFEREE]: So I will allow her to appear virtually for the next court date, which is October 27th. Moving forward, through, especially if we are proceeding to hearings in this case, she will need to be in person.

[CHILDREN'S NEW YORK ATTORNEY]: Is it possible for [petitioner] to appear via Teams?

[ATTORNEY REFEREE]: Yes, yes. She'll need to appear –

there's a New York platform which is Microsoft Teams. She'll be

receiving the link to join virtually via Microsoft Teams.

THE COURT: Wonderful. Thank you so much."

¶ 35     On October 6, the circuit court entered a corresponding written order in which it recognized that the UCCJEA "allows a court to decline to exercise jurisdiction if it finds that it is an inconvenient forum to make a custody determination" and that a court of another state is more appropriate. The court concluded:

"After reviewing both Memorandum of Law and considering the

NY Children's Attorney's report and the GAL's findings and with

the relevant factors ***, such as the amount of time the children

spend in each state, the closer connections they have to the State of

New York, the extended family and support system father and

children have in New York, [petitioner's] current mental health

diagnosis and needing more time to recover, and the financial

circumstances of each party, this Court on its own motion finds

Illinois to be an inconvenient forum for this case."

¶ 36     On October 12, 2023, petitioner filed a notice of appeal pursuant to Supreme Court Rule 306, which authorizes interlocutory appeals "from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*." Ill. S. Ct. R. 306(a)(2) (Sep. 30, 2020).

¶ 37     On November 6, 2023, petitioner filed in this court a "Petition for Leave to Appeal Pursuant to Illinois Supreme Court Rule 306(a)(2), as well as a supporting record. She did not file a brief.

¶ 38    In February 2024, this court entered an order dismissing the cause for want of prosecution, citing petitioner's failure to file a brief. This court subsequently vacated the dismissal and ordered that petitioner could choose to file an opening brief or could elect for her petition for leave to appeal to stand as her opening brief. The petitioner elected to stand on the petition for leave to appeal as her opening brief. Respondent did not file an appellee brief.

¶ 39                                        ANALYSIS

¶ 40    The sole issue in this appeal is whether the circuit court erred in declining to exercise jurisdiction upon finding that Illinois was an inconvenient forum, in favor of the New York court.

¶ 41    "The doctrine of *forum non conveniens* is an equitable doctrine that assumes the existence of more than one forum with jurisdiction over the parties and the subject matter of a case. [Citation.] Application of the doctrine invokes principles of convenience and fairness in choosing between two or more forums that have jurisdiction." *Griffith v. Mitsubishi Aircraft International, Inc.,* 136 Ill. 2d 101, 105 (1990). The doctrine "gives courts discretionary power that should be exercised *only in exceptional circumstances* when the interests of justice require a trial in a more convenient forum." (Emphasis in original). *Langenhorst v. Norfolk Southern Ry. Co*, 219 Ill. 2d 430, 442 (2006).

¶ 42    Our supreme court has recognized a number of "private and public interest factors to be considered in applying the doctrine of *forum non convieniens*." *Id.* at 443. Private interest factors include (1) the convenience of the parties; (2) the relative ease of access to testimony and other evidence; and (3) "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id*. Public interest factors include "(1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense *** on residents of a forum that has little connection

to the litigation, and (3) the administrative difficulties presented by adding litigation to already contested court dockets." *Id*. at 443-44.

¶ 43    The UCCJEA has specific provisions pertaining to the inconvenient forum doctrine. The UCCJEA "was promulgated to end custody jurisdictional disputes between states, to promote cooperation between states in determining custody issues, and to enhance the ability of states to enforce custody orders expeditiously." (Internal quotation marks omitted.) *Fleckles v. Diamond*, 2015 IL App (2d) 141229, ¶ 32.  The UCCJEA "provides state trial courts with a method to resolve jurisdictional questions that arise in child custody disputes, and the statute gives priority to the state that is the child's 'home state.'" *Id*.  The "home state" means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding."  750 ILCS 36/102 (West 2022).

¶ 44    There was apparently no dispute that Illinois is the home state for purposes of the UCCJEA. Nevertheless, section 207(a) of the UCCJEA specifically affords an Illinois court discretion to decline to exercise jurisdiction in favor of a more convenient forum:

> "A court of this State which has jurisdiction under this Act to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court." 750 ILCS 36/207(a) (West 2022).

¶ 45    Section 207(b) of the UCCJEA additionally instructs:  "Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of

another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:

      (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

      (2) The length of time the child has resided outside this State;

      (3) The distance between the court in this State and the court in the state that would assume jurisdiction;

      (4) The relative financial circumstances of the parties;

      (5) Any agreement of the parties as to which state should assume jurisdiction;

      (6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

      (7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

      (8) The familiarity of the court of each state with the facts and issues in the pending litigation." 750 ILCS 36/207(b) (West 2022).

¶ 46    A decision regarding *forum non conveniens* is reviewed for an abuse of discretion. *Ruch v. Padgett,* 2015 IL App (1st) 142972, ¶ 36. That is, we will reverse the circuit court's decision only upon a showing that the circuit court abused its discretion in balancing the relevant factors. *Id*. ¶ 38. A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court. *Langenhorst*, 219 Ill. 2d at 442.

¶ 47 We also keep in mind that "[w]hen an appellate court reviews a trial court's *forum non conveniens* order, 'the issue is not the detail of the underlying order, but whether the circuit court abused its discretion.'" *Ruch*, 2015 IL App (1st) 142972, ¶ 40 (quoting *Estate of Rath v. Abbott Laboratories, Inc*. 2012 IL App (5th) 100096, ¶ 23). "As a result, we may affirm a trial court's *forum non conviens order* on any basis found in the record." *Ruch*, 2015 IL App (1st) 142972, ¶ 40.

¶ 48 In this appeal, petitioner argues the circuit court abused its discretion in "sua sponte declining to exercise jurisdiction." She suggests that the circuit court ignored or improperly weighed relevant factors. She asserts that the relevant factors, including those enumerated under section 207(b) of the UCCJEA, weigh heavily in favor of Illinois retaining jurisdiction.

¶ 49 Insofar as section 207(b) instructs the court to consider whether domestic violence has occurred, petitioner asserts the circuit court refused to give weight to her allegations of abuse by respondent. Regarding the section 207(b) factors of "the length of time the child has resided outside this State" and "the nature and location of the evidence required to resolve the pending litigation," she claims that these factors weigh heavily in favor of Illinois, since the children lived in Cook County from March 2022 to August 2023. Petitioner points out that witnesses and evidence concerning their education and healthcare during that 18-month period, such as teachers and treating physicians, would be found in Illinois. She also notes that the New York attorney referee remarked that the evidence concerning how and why the children were brought back to New York in 2023 would largely be found in Illinois. That is, petitioner asserts the "mental health issues" discussed at the court conferences "were precipitated in Illinois, at an Illinois based mental institution, with Illinois police officers, family, friends, etc."

¶ 50    Insofar as section 207(b) requires consideration of the distance between the states at issue and the relative financial circumstance of the parties, she asserts it would be burdensome for her to attend court in New York, both due to her medical condition and the costs of travel. She claims that respondent is in a much better financial position, and that she is a "low-income Medicaid recipient" that could not afford travel to New York.

¶ 51    We acknowledge this is not necessarily a clear case. Petitioner makes some valid points, and we cannot say that we would have weighed the factors the same way and made the same decision, had we been in the position of the circuit court. Nevertheless, on the record before us, we cannot say the trial court's decision constituted an abuse of discretion, *i.e.,* that no reasonable person would take the view adopted by the circuit court. *Langenhorst*, 219 Ill. 2d at 442.

¶ 52    At the outset, we note the record on appeal appears to be incomplete. Significantly, at the October 5, 2023, UCCJEA conference, the court stated it received "a memorandum of law [from respondent's counsel] in support of Illinois declining jurisdiction as an inconvenien[t] forum." When the court asked if the parties had a chance to review it, petitioner's counsel (who is not her attorney in this appeal) answered affirmatively. Although petitioner's counsel claimed that respondent's memorandum contained factual misstatements, her counsel apparently did not submit any written response in opposition.

¶ 53    Significantly, the memorandum of law referenced by the circuit court is not included in the record on appeal. The burden is on petitioner, as appellant, to present a sufficiently complete record to support a claim of error.  See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). "Any doubts or deficiencies arising from an incomplete record will be construed against the appellant." *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777, ¶ 31 (citing *Foutch*, 99 Ill. 2d at 392). Accordingly, we must presume that the contents of the memorandum of law supported the trial court's

determination that the relevant factors weighed in favor of declining jurisdiction in favor of New York proceedings. This is especially the case, since the circuit courts' October 6 written order indicated that it considered that written submission in making its decision.

¶ 54    Moreover, the record before us does not convince us that the trial court's decision to decline Illinois jurisdiction in favor of New York was so unreasonable that it constituted an abuse of discretion. While reasonable minds might differ as to which state was the most appropriate forum under the various factors, there can be no doubt that New York state had sufficient connections to the underlying dispute, such that the circuit court's decision was not unreasonable. In other words, we cannot say that the relevant  factors were so heavily weighted in favor of Illinois that the circuit court's decision must be reversed as unreasonable.

¶ 55     As the trial court noted, one of the statutory factors to be considered is "the length of time the child has resided outside this State." 750 ILCS 36/207(b). The trial court correctly and appropriately noted that the children lived in New York before March 2022 and after August 2023. This means that the older child has spent the bulk of his life in New York state; he was there for the first six and a half years of his life following his September 2015 birth, and he was brought back to New York when he was nearly 8 years old.  The younger child was in New York from his November 2021 birth until he was about four months old, and was returned to New York in August 2023, when he was under two years old. The children have apparently remained there since, in the care of their father and paternal grandparents. Clearly, the New York forum has an interest in the custody dispute.

¶ 56    The trial court could similarly find these facts weighed in favor of New York with respect to the statutory factor of "the nature and location of the evidence required to resolve the pending litigation, including testimony of the child."  750 ILCS 36/207(b)(6). That is, New York is the

state where the parties became parents to the children, and the older child spent his first several years of life there (from his 2015 birth until March 2022). In turn, New York would presumably be the location of witnesses and evidence concerning the parties' relationship and care for their older child from 2015 to 2022, as well as their relationship in the first few months of the younger son's life. We also note that, insofar as petitioner alleges that she relocated from New York to Chicago "in consideration of [respondent's] violence and the safety of the minor children", New York would presumably be the primary location of witnesses or evidence as to whether respondent endangered or threatened petitioner or the children while they resided in New York. Clearly, such evidence of the parties' New York conduct could be highly relevant in assessing the best custody arrangement for the children.

¶ 57 Moreover, it was undisputed that since August 2023, the children resided with their father (respondent) and their paternal grandparents in New York. The New York-appointed children's attorney reported to the circuit court that she had already spoken with the older child, who apparently expressed a wish to remain with his father. Presumably, that child's testimony could be crucial in determining custody issues. The circuit court could reasonably find that it would be less burdensome to the children for New York to retain jurisdiction, rather than continue proceedings in Illinois.

¶ 58 We recognize the petitioner raises valid concerns pertaining to the statutory factors of the distance between the states at issue and the parties' "relative financial circumstances," 750 ILCS 36/207(b)(3),(4) (West 2022). Since petitioner is an Illinois resident, the circuit court's decision to decline jurisdiction in favor of New York could prove logistically and financially burdensome to her, especially if the New York court requires her to appear in person at subsequent hearings. The circuit court apparently considered this at the October 5, 2023 conference, when it asked the New

York attorney referee if petitioner could continue appear in New York proceedings via Zoom, as she had in the conferences with the circuit court. The New York attorney referee gave somewhat contradictory statements, first indicating petitioner would need to physically be in person, but then suggesting that she could appear virtually through the Microsoft "Teams" program.

¶ 59 We sincerely hope that, in future proceedings, the New York court permits petitioner to participate via electronic means if possible, in order to avoid her from incurring unnecessary expenses. Nonetheless, even assuming that New York's exercise of jurisdiction imposes a financial burden on petitioner, we cannot say that single reason is sufficient to deem the circuit court's decision an abuse of discretion. Rather, the record reflects that after considering all the relevant factors, including those under section 207(b) of the UCCJEA, the court concluded that New York state had stronger connections to the subject matter of the dispute and the relevant evidence, and was a more convenient and appropriate forum. On the record before us, we cannot say that determination was unreasonable or an abuse of discretion; thus, we are compelled to affirm.

¶ 60                                    CONCLUSION

¶ 61 For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 62 Affirmed.